**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS**

| | |
|---|---|
| ABIGAIL QUINN, as Special Administrator of the Estate of LANCE JONES, deceased, | Civil Action No. 1:14-cv-3260 |
| | Honorable Judge Colin S. Bruce |
| Plaintiff, | |
| vs. | |
| NEIL WILLIAMSON, SHERIFF OF SANGAMON COUNTY, ILLINOIS and UNKNOWN NURSE, DR. SAM GAINES UNKNOWN, PRISON GUARD 1, PRISON GUARD 2, PRISON GUARD 3, | |
| Defendants | |

**DEFENDANT SAM GAINES, M.D.'s MOTION FOR SUMMARY JUDGMENT**

NOW COMES Defendant, SAM GAINES M.D., by his attorneys KITCH DRUTCHAS WAGNER VALITUTTI & SHERBROOK, and pursuant to Fed. R. Civ. P. 56, requests that this Honorable Court grant Dr. Gaines' Motion for Summary Judgment. In support of his Motion, Dr. Gaines states as follows:

## I.  INTRODUCTION

Dr. Samuel Gaines is a Board Certified Emergency Physician who staffed the Emergency Department at St. John's Hospital in Springfield, Illinois in June 2013, through a contract with Central Illinois Emergency Physicians, LLP (hereinafter referred to as "CIEP"). Dr. Gaines was a limited partner with CIEP. CIEP only had a contract with St. James Hospital to staff St. John Hospital's Emergency Department with emergency physicians. Neither Dr. Gaines nor CIEP had a contract with the Sangamon County Jail. Dr. Gaines has never worked at the Sangamon County Jail in any capacity and he has never treated an inmate at the Sangamon County Jail.

On June 15, 2013, the plaintiff's decedent, Mr. Lance Jones, was an inmate at the Sangamon County Jail. He was transported to the St. John's Hospital's Emergency Department with various complaints. Dr. Gaines assessed Mr. Jones, ordered a series of tests, initiated

treatments and discharged Mr. Jones from the Emergency Department. Mr. Jones returned to the Sangamon County Jail and subsequently died on June 25, 2013.

On September 14, 2014, Plaintiff, as Special Administrator of the Estate of Lance Jones, filed a three count Complaint against Dr. Gaines and other defendants. In Count II Plaintiff alleges that Dr. Gaines is liable under 42 U.S.C. §1983 for acting under the color of state law and deliberately depriving plaintiff's decedent of his constitutionally protected rights under the Fourteenth Amendment. In Count III Plaintiff alleges that Dr. Gaines committed state law malpractice and is liable under pendent state law actions under the Illinois Wrongful Death and Survival Acts.

On October 24, 2014, Dr. Gaines filed a Motion to Dismiss Plaintiff's Complaint. On November 19, 2014, this Court dismissed Count III of Plaintiff's Complaint but denied Defendant's motion to dismiss Count II because there were enough facts in the Complaint "to allege a claim to relief that is plausible" to support a 42 U.S.C. §1983 claim because Plaintiff's alleged that Dr. Gaines was "on-call" to treat Sangamon County inmates.

The Court's order left Plaintiff's 42 U.S.C. §1983 claim pending against Dr. Gaines. However, based upon facts secured in discovery, Dr. Gaines is entitled to summary judgment as a matter of law because he was not acting under the color of state law on June 15, 2013, he was not "on-call" to treat Sangamon County inmates and Dr. Gaines' care and treatment of Mr. Jones was just, reasonable and complied with the standard of care.

## II.  UNDISPUTED MATERIAL FACTS

1.     On September 14, 2013, Plaintiff, Abigail Quinn, as Special Administrator of the Estate of Lance Jones, filed a three count Complaint against Dr. Samuel Gaines and other defendants in connection to medical care that was rendered to plaintiff's decedent in June 2013. (See, Plaintiff's Complaint at Law, a copy of which is attached hereto as Exhibit 1.) Counts II and III of Plaintiff's Complaint at Law are directed at Dr. Gaines. (See, Exhibit 1.)

2.     In Count II, Plaintiff alleges that Dr. Gaines was an emergency room doctor from St. John's Hospital. (Exhibit 1, para. 7.) Plaintiff alleges that plaintiff's decedent was arrested

and processed into the Sangamon County Jail in 2013. (Exhibit 1, para. 11.) Plaintiff's decedent was allegedly transferred from the Sangamon County Jail dispensary to St. John's Hospital's Emergency Department on June 20, 2013 after having experienced shortness of breath and chest pains. (Exhibit 1, para. 12.)

3. While in the Emergency Department, plaintiff alleges that "medical personnel there verified the serious medical needs of plaintiff's decedent and provided him with medications consistent with a heart attack." (Exhibit 1, para. 15.) Plaintiff's decedent was not kept overnight for observation; he was returned to the Sangamon County Jail "within a few hours." (Exhibit 1, para. 16.) According to the allegations in the Complaint, Dr. Gaines concluded that plaintiff's decedent was suffering from "heart burn." (Exhibit 1, para. 17.) Over the proceeding days, plaintiff alleges that plaintiff's decedent complained of serious discomfort to officers, nurses and fellow inmates of chest pain. (Exhibit 1, para. 19.)

4. Plaintiff further alleges that Dr. Gaines "was a physician on-call at St. John's Hospital who provided certain medical care for the Sangamon County Jail on June 20, 2013." (Exhibit 1, para. 31.) By virtue of Dr. Gaines' alleged position, plaintiff claims that "all of Dr. Gaines' actions or omissions were performed under the color of state law." (Exhibit 1, para. 32.)

5. Plaintiff further alleges that Dr. Gaines was "deliberately indifferent" to securing plaintiff's decedent's rights to adequate medical care protected under the Fourteenth Amendment and that Dr. Gaines committed one or more of the following acts or omissions: Failed to frequently monitor plaintiff's decedent from June 20-25, 2013; failed to call in a cardiologist to evaluate plaintiff's decedent; failed to observe plaintiff's decedent for a reasonable period of time; failed to order sufficient tests to rule out a heart attack; refused to admit plaintiff's decedent; failed to advise the Sangamon County nursing staff to check plaintiff's decedent's vitals; and, refused to treat plaintiff's decedent. (Exhibit 1, para. 36(a)(f).)

6. On November 4, 2014, Dr. Gaines filed his Answer to Plaintiff's Complaint. (A copy of Dr. Gaines' Answer is attached hereto as Exhibit 2.) In his Answer, Dr. Gaines denied that he was a state actor or that he was acting under the color of state law so as to be liable under

42 U.S.C. §1983. (Exhibit 2, para. 1.) Dr. Gaines also answered that he was not "on-call" to the Sangamon County Jail nor did he have a contract or agreement with the Sangamon County Jail to do so. (Id.)

7. Although Dr. Gaines agreed that plaintiff's decedent died on June 25, 2013, Dr. Gaines only treated plaintiff's decedent on June 15, 2013, not June 20, 2013 as alleged in Plaintiff's Complaint. (Exhibit 2, paras. 3, 12.) Dr. Gaines further admitted that he performed numerous tests and studies on plaintiff's decedent on June 15, 2015 and subsequently discharged him over five hours later with follow-up instructions. (Exhibit 2, paras. 12, 15-16.)

8. Dr. Gaines denied having any relationship with the Sangamon County Jail and stated that he never saw plaintiff's decedent after June 15, 2013. (Exhibit 2, para. 36.) Dr. Gaines denied all the other material allegations of negligence and further denied any claim that his conduct was in any way "deliberately indifferent." (Exhibit 2, paras. 36, 41-42.)

9. On December 22, 2014, Dr. Gaines filed his 26(a) Disclosure. (A copy of the 26(a) Disclosure is attached hereto as Exhibit 3.) Attached to the Disclosure is a copy of the Physician Partnership Agreement between CIEP and Dr. Gaines. (See Exhibit 3, attachment A.) The Agreement memorializes the limited partnership agreement between CIEP and Dr. Gaines to staff emergency departments with contractual agreements with CIEP. (Id.)

10. In addition, Dr. Gaines also produced a copy of the Agreement for Emergency Department Management Services between CIEP and St. John's Hospital and Amendments. (See Exhibit 3, attachment B.) The Agreement and Amendments memorialize that Dr. Gaines staffed the St. John's Hospital's Emergency Department pursuant to CIEP's agreement with the Hospital. (Id.)

11. Dr. Gaines also produced what medical records he had from the St. John's Emergency Department in connection to his care and treatment of plaintiff's decedent on June 15, 2013. (See Exhibit 3, attachment C.) The medical records document the care and treatment Dr. Gaines rendered to plaintiff's decedent on June 15, 2013 and the fact that the plaintiff's decedent was treated in the Emergency Department for well over five hours. (Exhibit 3,

attachment C.)  The medical records also show that plaintiff's decedent was placed on a cardiac monitor, he received an EKG, chest x-rays, various lab studies, a D-Dimer, cardiac enzymes, and a stress test.  (Id.)

12.  In addition to the contracts attached to Dr. Gaines' 26(A) Disclosure, Dr. Gaines also signed a Declaration, a copy of which is attached hereto as Exhibit 4.  In Dr. Gaines' Declaration, Dr. Gaines states that he is a Board Certified Internist and Emergency Physician. (Exhibit 4, para. 2.)  He has practiced medicine for over thirty (30) years.  (Exhibit 4, para. 4.)  In June 2013, Dr. Gaines was a limited partner with CIEP.  (Id. at para. 5.)  Dr. Gaines worked in the Emergency Department of St. John's Hospital through CIEP.  (Exhibit 4, para. 8.)

13.  Dr. Gaines saw, treated and evaluated plaintiff's decedent in the Emergency Department at St. John's Hospital on June 15, 2013.  (Exhibit 4, para. 9.)  Mr. Jones arrived via ambulance at 9:40 a.m. and had complaints of chest pain, shortness of breath and nausea. (Exhibit 4, para. 10.)  He was previously medicated in route with aspirin, nitroglycerin and oxygen.  (Id.)  His current pain complaint was 3 out of 10.  (Id.)  His EKG showed a normal sinus rhythm.  (Id.)

14.   Dr. Gaines performed a history and physical on Mr. Jones.  (Exhibit 4, paras. 11-12.)  The patient remained on oxygen via nasal cannula.  (Id. at para. 13.)  Dr. Gaines ordered a series of tests, including an EKG, cardiac enzymes, cardiac monitor, a stress test, a complete blood culture, a basic metabolic panel, a D-Dimer and chest x-rays.  (Id.)

15.  The patient's cardiac work-up was normal.  (Exhibit 4, para. 14.)  His condition improved.  (Id.)  Dr. Gaines re-examined the patient and concluded that Mr. Jones had reflux esophagitis or possible esophageal spasm.  (Exhibit 4, para. 15.)  Plaintiff's decedent was discharged with Zantac and ordered to follow-up with a physician in three days.  (Id.)  Dr. Gaines opined that he complied with the standard of care at all times.  (Exhibit 4, para. 16.)

16.  Dr. Gaines never treated a patient at the Sangamon County Jail.  (Exhibit 4, para. 17.)  Dr. Gaines has no contractual agreement to treat patients at the Sangamon County Jail. (Exhibit 4, para. 18.)  Dr. Gaines has never been "on-call" at or for the Sangamon County Jail.

(Exhibit 4, para. 19.) Dr. Gaines had no further contact with Mr. Jones after June 15, 2013. (Id. at para. 20.) Dr. Gaines only encountered plaintiff's decedent because plaintiff's decedent presented to the St. John's Hospital's Emergency Department. (Id. at para. 21.)

17.     Dr. Gaines treats all patients who present to the St. John's Emergency Department regardless of whom they are or their ability to pay for services. (Exhibit 4, para. 22.)

18.     In addition to Dr. Gaines' Declaration, Dr. Derek King, the general partner of CIEP, also signed a Declaration, a copy of which is attached hereto as Exhibit 5. According to Dr. King, CIEP had no contract to treat patients at the Sangamon County Jail. (See Exhibit 5, para. 5.) CIEP only had a contract with St. John's Hospital to staff St. John's Emergency Department with emergency physicians. (Exhibit 5, para. 6.)

19.     Finally, co-defense counsel for Mr. Neil Williamson, the Sheriff of Sangamon County, produced an agreement for medical care to Sangamon County Jail inmates between the County of Sangamon and Advanced Correctional Healthcare. (A copy of the Agreement for the Provision of Inmate Health Services at the Sangamon County Jail, Sangamon County, Illinois, is attached hereto as Exhibit 6.)

20.     The terms and conditions in the Inmate Health Service Agreement establishes that Advanced Correctional Healthcare personnel, including physicians, LPN's, nurse practitioners and nurses shall visit the jail, treat inmates and be available "on an on-call basis seven (7) days per week, twenty four (24) hours per day" with the Sangamon County Jail. (See Exhibit 4, para. 1.0 - Duties and Obligations of ACH.)

## III. ARGUMENT

21. Summary judgment is appropriate if, construing all facts and drawing all inferences in favor of the non-moving party, "the movant establishes that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *(Fed. R. Civ. P. 56(a); Celetex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986))*. Once a party moving for summary judgment demonstrates the absence of a disputed issue of material fact, the burden of proof shifts to the non-moving party to provide evidence of a specific fact that creates a genuine dispute. (*Carroll v. Lynch, 698 F.3d 561, 564 (7th Cir. 2012)*).

22. In Count II of her Complaint Plaintiff alleges that Dr. Gaines violated 42 U.S.C §1983 because he was "deliberately indifferent" to securing plaintiff's decedent's rights to adequate medical care protected under the Fourteenth Amendment.[1] (Exhibit 1, para. 36).

23. Customarily, in order to prevail in a 42 U.S.C. §1983 claim against a government employee or agent, the plaintiff must plead and prove that (1) the conduct complained of was committed by a person acting under the color of state law; and (2) the conduct deprived the plaintiff of a constitutional or federal statutory right. (*Estate of Sims v. County of Bureau, 506 F.3d 509, 514 (7th Cir. 2007); Case v. Milewski, 327 F.3d 564, 567 (7th Cir. 2003); Archie Brown v. Roseland Community Hospital, 2013 U.S. Dist. LEXIS 179521.*)

24. *In West v. Atkins, 487 U.S. 42, 108 S. Ct 2250 (1988),* the Supreme Court noted that when a physician is employed by the state to provide medical services to state prison inmates, the physician acts under the color of state law and may be liable under §1983. The Court reasoned that since the physician is employed by the state he is obligated to treat prison inmates in fulfillment of his responsibilities, and in so doing, he is "clothed with the authority of the state." (*West, 487 U.S. at 55.*)

25. When a plaintiff brings a 42 U.S.C. §1983 claim against a defendant who is not a government official or employee, the plaintiff must show that the private individual acted under the color of state law through some tacit agreement with the state. (*Rodriguez v. Plymouth*

---

[1] The Fourteenth Amendment forbids the state from "depriv[ing] any person of life, liberty, or property, without due process of law. U.S. Const. Amend XIV. The more appropriate federal right in support of Plaintiff's §1983 claim is the Eighth Amendment, because the Plaintiff is asserting deliberately indifferent medical care.

*Ambulance Service*, 577 F.3d 816, 822-23 (7th Cir. 2009); *Brown*, 2013 U.S. Dist. LEXIS 179521.) Acting under color of state law can be shown when (1) the state has cloaked the defendant in some degree of authority, often through employment or an agency relationship, or (2) when the defendant has conspired or acted in concert with state officials to deprive the plaintiff of his civil rights. (*Case v. Milewski*, 327 F. 3d at 567).

26. In *Rodriguez,* an inmate was spitting up blood and was transferred to one emergency department for two hours and then sent to a second hospital. Plaintiff alleged that the emergency department staff exhibited deliberate indifference to his serious medical needs. The *Rodriguez* court noted the difficulty in finding private individuals to be state actors, especially in the context of emergency department care. The court stated as follows:

> [P]rivate organizations and their employees that have only an incidental and transitory relationship with the state's penal system usually cannot be said to have accepted, voluntarily, the responsibility of acting for the state and assuming the state's responsibility for incarcerated persons. For instance, an emergency medical system that has a preexisting obligation to serve all persons who present themselves for emergency treatment hardly can be said to have entered into a specific voluntary undertaking to assume the state's special responsibility to incarcerated persons.

*Rodriguez*, 577 F. 3d at 827.

27. The judge in *Rodriguez* found that the emergency physician was not a state actor and could not be liable to plaintiff under §1983 because he had no contract with the state and did not voluntarily undertake such an obligation to do so. *(Id.)* A similar ruling was found in *Archie Brown v. Roseland Community Hospital*, 2013 U.S. Dist. LEXIS 179521. In *Brown,* when the plaintiff cut his wrist during a police interrogation and was transferred to the emergency department where he was treated by emergency personnel. *(Id.)* The court found that simply acting as an emergency physician who "serves all persons who present themselves for treatment does not create a specific voluntary undertaking to assume the state's special responsibility to incarcerated persons' (*Brown*, at p. 3 (quoting from *Rodriquez*, 577 F. 3d. at p. 827-28.)

28. Based upon the facts of this case, Dr. Gaines was not a government agent or employee. He was simply a private emergency physician with CIEP and he performed shifts in the Emergency Department at St. John's Hospital. (See Exhibit 3, attachments A, B, C and

Exhibit 4 and 5.) Dr. Gaines treated every patient who presented to the Emergency Department for care. (Exhibit 4.)

29. Dr. Sam Gaines was not "on-call" to the Sangamon County Jail in any way. (See Exhibit 4.) He had no special relationship with the Sangamon County Jail. (Exhibit 4.) Dr. Gaines was not "cloaked" in state authority when plaintiff's decedent presented to the St. John's Hospital's Emergency Department so as to expose Dr. Gaines to liability under §1983. (See Exhibit 3, attachments A and B, and Exhibits 4-5.) Dr. Gaines simply acted as an emergency physician when he encountered plaintiff's decedent on June 15, 2013. Dr. Gaines' care was incidental and transitory. Dr. Gaines assessed and evaluated plaintiff's decedent. He treated the plaintiff's decedent and then discharged him with medications and instructions to follow-up with his own physician. (Exhibit 4.)

30. It is abundantly clear based on the facts in the record that "the state" contracted with a medical group to treat inmates at the Sangamon County Jail. Sangamon County specifically secured medical coverage to the Sangamon County Jail inmates through its contract with Advanced Correctional Healthcare. (See Exhibit 6.) Pursuant to the expressed terms of that contract, Advanced Correctional Healthcare was required to provide care to the inmates and be "on-call" to the Sangamon County Jail 24 hours a day and seven days a week. (See Exhibit 6, Section 1.0 – Duties and Responsibilities of ACH.)

31. Neither Dr. Gaines nor CIEP had such a contract or agreement with the Sangamon County Jail. (See Exhibit 4 and 5.) CIEP only contracted with St. John's Hospital to staff its Emergency Department with emergency physicians. (Exhibit 5, see also, Exhibit 3, attachment B.)

32. Therefore, contrary to Plaintiff's allegations, Advanced Correctional Health was actually the "on-call" entity who contracted with the Sangamon County Jail to treat inmates. Dr. Gaines had no such relationship with the Sangamon County Jail.

33. As a result, Dr. Gaines was not "cloaked" in any degree of authority as an agent or employee of the Sangamon County Jail and there is no evidence that Dr. Gaines conspired with any state agency to deprive plaintiff's decedent to his right for care.

34. In addition, even if we assume that Dr. Gaines was a "state actor," there are no facts in the record to establish that Dr. Gaines acted with "deliberate indifference" to deprive plaintiff's decedent of a protected right. As a matter of fact, Dr. Gaines' care complied with the standard of care. (See Exhibit 4.)

35. In order to succeed in a §1983 action, plaintiff must also show that defendant's conduct showed evidence of "deliberate indifference" to plaintiff's decedent's serious medical needs. (*See Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000.) Medical malpractice, which requires proof that a physician deviated from the standard of care, does not constitute deliberate indifference. (*Farmer v. Brennan*, 511 U.S. 825, 836, 114 S.Ct. 1970 (1994.) The defendant in §1983 claim must show purposeful indifference. *(Id.)* The defendant must know and disregard an excessive risk to the inmate and a jury can then infer that such conduct is "so far a field that it was not based on a medical judgment." (*Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006.)

36. In this case, no such conduct can be inferred. According to Dr. Gaines' Declaration, he set forth a medically sound treatment plan for his care and treatment of plaintiff's decedent in the Emergency Department on June 15, 2013. (See Exhibit 4.) Dr. Gaines performed a history and preformed a physician examination. (Id.) Dr. Gaines ordered a series of tests to assess plaintiff's decedent including an EKG, cardiac monitoring, a D-Dimer study, cardiac enzymes, additional lab studies, chest x-rays and a stress test. (See Exhibit 4.) The patient was also monitored for over five hours. (Exhibit 4 and Exhibit 3, attachment C)

37. Plaintiff's decedent's cardiac work-up was normal and Dr. Gaines concluded that the patient had GI issues. (Exhibit 4.) Dr. Gaines treated the patient. Plaintiff's decedent's symptoms resolved and he was discharged with additional medications and instructed to follow-up with his physician in three days. (Id.)

38.     Dr. Gaines even opined that he complied with the standard of care when he treated plaintiff's decedent on June 15, 2013. (Exhibit 4.) The opinion that Dr. Gaines complied with the standard of care means that he acted like a "reasonable careful emergency physician" under the circumstances. (See I.P.I Jury Instruction 105.01.)  Such conduct is a far cry from the "deliberate indifference" required to establish a violation of §1983.

WHEREFORE, for the foregoing reasons, Dr. Gaines respectfully requests that this Court grant his motion for summary judgment on his behalf and against plaintiff and dismiss Dr. Gaines from this case with prejudice because there is genuine dispute of material fact to support plaintiff's claims against Dr. Gaines.

                            KITCH DRUTCHAS WAGNER
                            VALITUTTI & SHERBROOK

          By:    /s/ Michael T. Walsh_____
                  MICHAEL T. WALSH (6208000)
                  20 North Clark Street, Suite 600
                  Chicago, IL  60602-4252
                  Phone: (312) 621-7981
                  Attorneys for Defendant, Dr. Sam Gaines

Kitch Drutchas Wagner
Valitutti & Sherbrook
20 North Clark Street, Suite 600
Chicago, Illinois 60602
(312) 332-7901
(312) 332-7903 Fax
Atty. No. 44761

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**

| | |
|---|---|
| ABIGAIL QUINN, as Special Administrator of the Estate of LANCE JONES, deceased,<br><br>Plaintiff,<br><br>vs.<br><br>NEIL WILLIAMSON, SHERIFF OF SANGAMON COUNTY, ILLINOIS and UNKNOWN NURSE, DR. SAM GAINES UNKNOWN, PRISON GUARD 1, PRISON GUARD 2, PRISON GUARD 3,<br><br>Defendants | Civil Action No. 1:14-cv-3260<br><br>Honorable Judge Colin S. Bruce |

**CERTIFICATE OF SERVICE**

The undersigned certifies that copies of **Defendant, Sam Gaines, M.D.'s Motion for Summary Judgment** were served to the attorneys of record of all parties to the above cause via the Court's CM/ECF electronic filing system, on this April 30, 2015.

                                                   KITCH DRUTCHAS WAGNER VALITUTTI & SHERBROOK

                              By:   /s/ Michael T. Walsh_____
                                       MICHAEL T. WALSH (6208000)
                                       20 North Clark Street, Suite 600
                                       Chicago, IL  60602-4252

                                       (312) 621-7981
                                       Attorneys for Defendant, Dr. Sam Gaines

**PROOF OF SERVICE**

I hereby certify that on April 30, 2015, I electronically filed the foregoing instrument, Defendant, Sam Gaines, M.D.'s Motion for Summary Judgment and Certificate of Service, with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the foregoing:

James S. Murphy-Aguilu: murphyaguilulaw@gmail.com  -  Attorneys for Plaintiff
Sean O'Brien: sean@OMAlawgroup.com
Timothy Joseph Fischella: tjfischella@fischellalaw.com

Theresa M. Powell: tpowell@heylroyster.com  -  Attorney for Co-Defendant

                                                 /s/ Michael T. Walsh_____
                                                      Michael T. Walsh