**E-FILED**
Monday, 22 December, 2014  12:04:33 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ABIGAIL QUINN, as Special Administrator of the Estate of LANCE JONES, deceased, | ) ) ) ) ) ) | Civil Action No. 1:14-cv-3260 |
| | ) | Honorable Judge Colin S. Bruce |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| NEIL WILLIAMSON, SHERIFF OF SANGAMON COUNTY, ILLINOIS and UNKNOWN NURSE, DR. SAM GAINES UNKNOWN, PRISON GUARD 1, PRISON GUARD 2, PRISON GUARD 3, | ) ) ) ) ) ) ) | |
| Defendants | ) | |

### CERTIFICATE OF SERVICE

TO:   James Murphy-Aguilu
      Attorneys for Plaintiff
      1739 South Halsted St., 1F
      Chicago, IL 60608

      cc:   See Attached Service List

I hereby certify that on December 22, 2014, I served the above and foregoing **DEFENDANT SAM GAINES, M.D.'s DISCLOSURE PURSUANT TO RULE 26(A) OF THE FEDERAL RULES OF CIVIL PROCEDURE** by causing true and accurate copies of such paper to be transmitted to all counsel of record via email and U.S. Mail at 20 North Clark Street, Suite 600, Chicago, Illinois 60602-4252 on this December 22, 2014.

                          KITCH DRUTCHAS WAGNER
                          VALITUTTI & SHERBROOK

          By:    /s/ Michael T. Walsh_____
                 MICHAEL T. WALSH (6208000)
                 20 North Clark Street, Suite 600
                 Chicago, IL  60602-4252/(312) 621-7981
                 Attorneys for Defendant, Dr. Samuel Gaines

**EXHIBIT**

**3**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ABIGAIL QUINN, as Special | ) | Civil Action No. 1:14-cv-3260 |
| Administrator of the Estate of | ) | |
| LANCE JONES, deceased, | ) | |
| | ) | Honorable Judge Colin S. Bruce |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| NEIL WILLIAMSON, SHERIFF OF | ) | |
| SANGAMON COUNTY, ILLINOIS and | ) | |
| UNKNOWN NURSE, DR. SAM GAINES | ) | |
| UNKNOWN, PRISON GUARD 1, | ) | |
| PRISON GUARD 2, PRISON GUARD 3, | ) | |
| | ) | |
| Defendants | ) | |

## **SERVICE LIST**

James Murphy-Aguilu
1739 South Halsted St., 1F
Chicago, IL 60608
Office: 312-798-9080
Fax: 312-626-2461
omalawgroup@gmail.com
**Attorney for Plaintiff**

Theresa Powell
Jordan Hoelzer
Hey Royster
3731 Wabash Avenue
PO Box 9678
Springfield, IL 62791
Office: 217-522-8822
Fax: 217-523-3902
jhoelzer@heylroyster.com
tpowell@heylroyster.com
**Attorney for Defendants, Neil Williamson**
**and Sangamon County**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| ABIGAIL QUINN, as Special<br>Administrator of the Estate of<br>LANCE JONES, deceased,<br><br><br>Plaintiff,<br><br>vs.<br><br>NEIL WILLIAMSON, SHERIFF OF<br>SANGAMON COUNTY, ILLINOIS and<br>UNKNOWN NURSE, DR. SAM GAINES<br>UNKNOWN, PRISON GUARD 1,<br>PRISON GUARD 2, PRISON GUARD 3,<br><br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 1:14-cv-3260<br><br>Honorable Judge Colin S. Bruce |

## DEFENDANT SAM GAINES, M.D.'s DISCLOSURE
## PURSUANT TO RULE 26(a) OF THE FEDERAL RULES OF CIVIL PROCEDURE

NOW COMES Defendant, SAM GAINES MD through his attorneys KITCH DRUTCHAS WAGNER VALITUTTI & SHERBROOK and pursuant to Rule 26(a) for the Federal Rules of Civil Procedure, states as follows:

Pursuant to Rule 26(a)(1)(A)(i), the following is a list of individuals who may have discoverable information regarding Dr. Gaines' role as a private emergency physician in this matter:

### 1.  DR. SAM GAINES, M.D.

Dr. Gaines will testify that he was a limited liability partner with Central Illinois Emergency Physicians, LLP ("CIEP") at all relevant times.  A copy of the CIEP contract is attached hereto as Exhibit A.  Dr. Gaines will testify that he was never employed by the

Sangamon County Jail in any capacity. He will testify that he was never an "on-call" at Sangamon County Jail to treat its detainees or inmates. Dr. Gaines will testify that has never treated a patient at the Sangamon County Jail. He will testify that he never had a contract or agreement of any kind with the Sangamon County Jail, and neither did CIEP to his knowledge. Dr. Gaines will testify that he was never paid by the Sangamon County Jail.

Dr. Gaines will testify that he simply worked in the Emergency Department at St. John's Hospital in Springfield, Illinois as an emergency physician pursuant to the terms of a contract between CIEP and St. John's Hospital. See Exhibit B. He will testify that as an emergency physician at St. John's Hospital, Dr. Gaines sees and treats every person who comes into the Emergency Department regardless of the patient's residence, status or ability to pay.

Dr. Gaines will testify that he appropriately treated Mr. Lance Jones on June 15, 2013 as more accurately reflected in the medical records. Dr. Gaines will testify that he did not treat Plaintiff's decedent on June 20 as alleged in the Complaint.

2.    **DR. DERIK KING, M.D.**

Dr. Derik King will testify that he was the Managing Partner of CIEP at all relevant times. He will testify that CIEP entered into a contract with St. John's Hospital to staff St. John's Hospital's Emergency Department. See Exhibit B. Pursuant to the terms of the contract, Dr. Gaines was one of CIEP's limited partners who staffed the St. Johns Hospital's Emergency Department. CIEP had no contract or agreement with Sangamon County or the Sangamon County Jail to visit, assess or diagnose detainees or inmates at the Sangamon County Jail. None of CIEP's emergency physicians are on call at the Sangamon County jail.

Pursuant to Rule 26(a)(1)(A)(ii) of the Federal Rules of Civil Procedure, the following is a copy of documents and tangible things that Defendant has in his possession which may be used

to support his claim that he is not a state actor nor was he acting under the color of state law during his care and treatment of Plaintiff's decedent:

Exhibit A – Contract between CIEP and Dr. Gaines

Exhibit B – Contract between CIEP and St. John's Hospital

Exhibit C – Medical records in Defendant's possession regarding his care and treatment of Plaintiff's decedent on June 15, 2013

Pursuant to Rule 26(a)(1)(A)(iii) of the Federal Rules of Civil Procedure, the following is a computation of each category of damages claimed by the disclosing party:

Defendant states Plaintiff has no damages based upon the documentation and anticipated testimony referenced above.

Pursuant to Rule 26(a)(1)(a)(iv) of the Federal Rules of Civil Procedure, the following is a copy of the Declaration page of the insurance agreement:

A reservation of rights has been asserted in this matter based upon the scope and nature of the allegations contained in Plaintiff's Complaint.

KITCH DRUTCHAS WAGNER
VALITUTTI & SHERBROOK

By:     /s/ Michael T. Walsh_____
        MICHAEL T. WALSH (6208000)
        20 North Clark Street, Suite 600
        Chicago, IL  60602-4252

        (312) 621-7981
        Attorneys for Defendant, Dr. Samuel Gaines

Kitch Drutchas Wagner
Valitutti & Sherbrook
20 North Clark Street, Suite 600
Chicago, Illinois 60602
(312) 332-7901
(312) 332-7903 Fax
Atty. No. 44761

# PHYSICIAN PARTNERSHIP AGREEMENT

THIS IS A PHYSICIAN PARTNERSHIP AGREEMENT, effective the 1st day of January 2011 between Central Illinois Emergency Physicians, LLP, a Registered Limited Liability Partnership authorized to do business in the State of Illinois ("Partnership"), and Sam Gaines P C (Sam  Gaines, MD, FACEP) of 509 Colbrook Drive, Springfield, Illinois 62702-3384 ("Physician Partner").

1.      ENGAGEMENT.  Partnership hereby engages Physician Partner to supply professional medical services as a self-employed, duly licensed physician or Professional Corporation in consideration of the Guaranteed Partnership Payments and profit/loss allocations set forth herein, at medical facility or facilities, and Physician Partner accepts such engagement under the terms and conditions of this Physician Partnership Agreement, and the Master Partnership Agreement, hereinafter referred to as the "Partnership Agreements."  The performance of Physician Partner in evaluating and treating patients shall not be subject to the supervision, direction, or control of the Partnership or any other Physician Partner but shall be in accordance with the independent professional medical judgment of Physician Partner.

2.      TERM.  The term of the Partnership shall commence upon the effective date hereof and shall continue until terminated and dissolved.

3.      GUARANTEED PARTNERSHIP PAYMENTS.  Partnership shall pay Physician Partner a Guaranteed Partnership Payment for each hour Physician Partner provides professional services at the rate and location as set forth in the attached Compensation Addendum and as may be amended by the Managing Partner in writing from time to time.  Payment will be made monthly on or about the 20th day of every month and Physician Partner will receive a Schedule K-1 reflecting the Guaranteed Partnership Payments for the calendar year.  Partnership shall have no liability for any expenses or charges incurred by Physician Partner in performance of the Partnership Agreements other than as described herein.  Physician Partner hereby authorizes Partnership to set off and withhold from such Guaranteed Partnership Payments any sums due Partnership from Physician Partner, including but not limited to sums determined to be due for Partnership Benefit Plan, and/or due for failing to provide required notice pursuant to Paragraphs 5. and 7.A., and/or failing to provide the required documentation pursuant to Paragraph 4.E.

4.      QUALIFICATIONS AND MANNER OF PERFORMANCE.  Physician Partner hereby agrees to:

A.      Evaluate, examine and treat all persons who shall present themselves to the facility at which Physician Partner is scheduled.

B.      Render professional medical services in accordance with the applicable standard(s) of care.  Physician Partner warrants and represents that Physician Partner is licensed to practice medicine in Illinois, is experienced, competent, and physically and mentally able at all times to provide medical care, and is knowledgeable in the use of medical equipment, facilities, and procedures.

C.      Apply for and maintain medical staff privileges at each facility at which Physician Partner is scheduled and shall, at all times, maintain current certification in Advanced Cardiac Life Support, Advanced Trauma Life Support, and/or Pediatric Advanced Life Support and Neonatal Resuscitative Program Provider if these certifications are required by the facility(ies) at which the Physician Partner provides services.  Physician Partner also agrees to abide by the medical staff bylaws, rules and regulations of each facility at which Physician Partner is scheduled.  Fees, charges, or dues (if any) for the above shall be born by the Physician Partner.

D.      Assign to Partnership, its successors, designees and/or assigns, all fees, receivables, charges, and payments generated from or owed by patients (or their insurers) related to Physician Partner's services under the Partnership Agreements.

E.      Timely, complete and accurate preparation, review, completion, and/or return of: (i) patient medical records, including handwritten notes, hospital dictation system, and/or QualCharts®, and/or Documentation Feedback Education process, Audit for Chart Completion process; (ii) Partnership professional liability insurance information, documents, and forms; (iii) requested credentials and applications, including third party payor enrollment applications and forms; and (iv) any other documentation or forms requested by Partnership, all of which are to be completed consistent with the Partnership Compliance Statement set forth in Paragraph 4.2 of the Master Partnership Agreement.  This provision is considered material to the Partnership Agreements.



REC'D FEB 08 2011

F.    Supervise any physician extenders as may be requested by the Partnership

G.    Due to all parties' main concern of the highest quality of care as well as the financial hardship poor documentation places on the parties, Physician Partner acknowledges and agrees that Partnership may impose a penalty for failure of Physician Partner to timely and/or completely finalize any documentation. Any penalty will be at the sole discretion of the Managing Partner, including, but not limited to a withholding of Physician Partner's compensation or Partnership bonus distributions in the amount of the unbilled charges, a per patient revenue charge for each untimely or incomplete chart, or other penalty amount(s).

H.    Perform such other lawful activities relating to this Agreement as may be requested by Partnership from time to time.

5.    SCHEDULING. Scheduling of Physician Partner services shall be by mutual agreement between Partnership and Physician Partner. These guidelines are an integral part of the Partnership Agreements:

A.    Equity. There will be a fair and reasonable sharing of nights, weekends and holidays. Recognized holiday periods for the purposes of scheduling are Easter, Memorial Day, Fourth of July, Labor Day, Thanksgiving, Christmas, New Year's Eve, and New Year's Day. The long-term goal is to have Physician Partners of the LLP share in a balanced schedule.

B.    Requests. Requests for less than minimum hours must be made forty-five (45) days or more in advance and shall be considered on a first come, first serve basis.

C.    Payment for Additional Hours. Physician Partner will not be paid for any time worked beyond the scheduled shift except in the following situations: (1) When additional time has been approved by the Medical Director or Regional Director; (2) In life threatening or serious situations involving patient care (Code Blue, Resuscitation, etc.); (3) To provide coverage until arrival of the Physician Partner's replacement.

6.    MASTER PARTNERSHIP AGREEMENT. Physician Partner acknowledges receiving and reviewing a copy of the Master Partnership Agreement, as may be amended from time to time, which is attached hereto and incorporated herein by this reference, and that Physician Partner understands the terms and conditions of the Master Partnership Agreement (and any amendments) and agrees to be bound thereby. Execution of this Physician Partnership Agreement shall also constitute execution of the Master Partnership Agreement.

7.    TERMINATION. The Partnership Agreements may be terminated as follows:

A.    By either Physician Partner or Partnership, with or without cause, upon ninety (90) days written notice.

B.    By Partnership, effective immediately, if the contract for services between Partnership and any medical facility at which Physician Partner is scheduled is terminated, or upon loss of, or failure to obtain staff privileges (for any reason) at any facility at which Physician Partner may be scheduled to provide services.

C.    By Partnership, effective immediately, during the first sixty (60) days of this Partnership Agreement or at any time, if any facility at which Physician Partner is scheduled requests Physician Partner's removal from the schedule.

D.    By either party, effective immediately, in the event of a material breach of the Partnership Agreements by the other.

E.    Immediately upon: dissolution of partnership; death; retirement; adjudicated physical or mental incapacity of Physician Partner; or in the sole discretion of Partnership, if Physician Partner does not provide services pursuant to the Partnership Agreements for a period of six months from the end of the last month of service.

Upon termination of the Partnership Agreements, the Partnership interest of Physician Partner shall automatically terminate and be reassigned as provided in the Master Partnership Agreement.

8.    CO-TERMINATION OF STAFF PRIVILEGES AT FACILITY. The facility or facilities at which Physician Partner practices require(s) co-termination of staff privileges in order for Partnership to provide services. Accordingly, as required by the contract between Partnership and the facility or facilities at which Physician Partner practices, Physician Partner

hereby acknowledges that Physician Partner's medical privileges at any facility at which Physician Partner provides services through Partnership shall automatically terminate, without due process, as may be provided in the medical staff bylaws, upon termination of the Partnership Agreements, or upon termination of any agreement between Partnership and any facility at which Physician Partner provides services through Partnership. Loss of medical staff privileges by reason of co-termination is not a reportable event by Partnership to the National Practitioner Data Bank. Termination of Physician Partner's privileges due to co-termination does not prevent Physician Partner from re-applying for medical staff privileges.

9.     INTERFERENCE WITH CONTRACTUAL RELATIONS. Physician Partner agrees not to interfere with the contractual relationship between Partnership and any facility at which Physician Partner is scheduled during the term of the Partnership Agreements without prior written approval of Partnership. Partnership reserves all rights for remedies or damages to enforce this provision for any violation thereof.

10.     PROFESSIONAL LIABILITY INSURANCE. Partnership agrees it will provide Physician Partner with professional liability insurance on a claims' made basis or on an occurrence basis with industry standard limits of $1,000,000 per occurrence (a shared limit) and $3,000,000 annual aggregate, or such other limits that may be provided by Partnership to comply with statutory/regulatory or client facility requirements, through a carrier selected by Partnership. Certificates of Insurance will be provided upon request. If coverage is provided through National Guardian Risk Retention Group, Inc., Physician Partner also agrees that by execution of the Partnership Agreements that Physician Partner shall become a member of National Guardian Membership Association and hereby acknowledges that Physician Partner has read and is knowledgeable of the Information Circular of the Association, which describes the insurance program. Coverage shall be and will be applicable only to medical incidents arising out of and related to medical care and treatment while Physician Partner is providing professional services for Partnership, subject to the terms and conditions of the applicable policies of insurance. Upon termination of the Partnership Agreements by either party, Partnership agrees to provide an unlimited extended reporting period endorsement (tail coverage) for Physician Partner, if coverage was provided on a claims' made basis.

11.     POWER OF ATTORNEY, PROXY AND ASSIGNMENT OF FEES. Physician Partner hereby appoints Partnership and/or each hospital or emergency facility at which Physician Partner is scheduled (or their authorized employees, agents, representatives or assigns) as attorney-in-fact with full power of substitution and delegation, to execute, bill for and to receive monies or endorse checks due or payable to Physician Partner from any patient or third party payor by reason of medical professional services rendered by Physician Partner pursuant to the Partnership Agreements.

Physician Partner hereby appoints Partnership as his or her true and lawful attorney, with power of substitution and delegation, to vote at any meetings of the members of National Guardian Membership Association as may be held from time to time or to conduct any other activity related to the Association with all powers Physician Partner would possess if personally present.

The powers of attorney and proxy granted above have been granted to secure performance of Physician Partner's obligations under the Partnership Agreements and such powers may not be revoked, terminated or modified by Physician Partner, and such powers shall remain in full force and effect until all terms and conditions of the Partnership Agreements and all insurance claims and fee billing issues have been completed and resolved to satisfaction of Partnership.

12.     TAXES, WORKERS' COMPENSATION, HEALTH & DISABILITY COVERAGE. Physician Partner agrees, as a self-employed individual, to be fully and completely responsible for appropriate self employment tax payments, Social Security, Workers' Compensation, Health & Disability Coverage and any other tax or insurance payments that may be required by law. Physician Partner agrees to purchase Workers' Compensation and/or health/disability insurance that covers any and all on the job injuries and illnesses and automobile insurance for traveling to, from and between work. Physician Partner further agrees to release, hold harmless, indemnify, and defend Partnership and any facility at which Physician Partner provides services pursuant to the Partnership Agreements from any and all liability, personal injury, damages, claims or causes of action arising out of or related to Physician Partner's failure to procure any of these coverages.

13.     FREEDOM TO CONTRACT. Partnership acknowledges that Physician Partner may engage in any professional or other activity or business during the term of the Partnership Agreements as long as such activities do not interfere or conflict with and otherwise remain consistent with Physician Partner's obligations under the Partnership Agreements.

14.     SEVERABILITY. In the event any term or provision of the Partnership Agreements is found to be unenforceable or void, in whole or in part, then the offending term shall be construed as valid and enforceable to the maximum extent permitted by law, and the balance of the Partnership Agreements shall remain in full force and effect.

15.    GOVERNING LAW.  The Partnership Agreements shall be construed in accordance with the laws of the State of Michigan, and any action to enforce the terms and conditions of the Partnership Agreements shall be brought in the 13th Circuit Court or 86th District Court for the County of Grand Traverse, Michigan (Traverse City).

16.    NOTICES.  All notices required under the Partnership Agreements shall be made by regular mail, effective on the date post marked, to the following addresses:

Partnership:

Central Illinois Emergency Physicians, LLP
4075 Copper Ridge Drive
Traverse City, Michigan 49684-4796

Physician Partner:

Sam Gaines P C
(Sam Gaines, MD, FACEP)
509 Colbrook Drive
Springfield, Illinois 62702-3384

17.    ASSIGNMENT AND DELEGATION.  The Partnership Agreements are personal to Physician Partner and any duties or obligations hereunder may not be assigned by Physician Partner, nor may the Physician Partner's duties be delegated, without prior written consent of the Partnership.  If Physician Partner is a Professional Corporation, only the individual signing on behalf of the Professional Corporation may provide clinical services contemplated in the Partnership Agreements.

IN WITNESS WHEREOF, the parties have executed the Partnership Agreements effective the day and date first above written.

PARTNERSHIP:
CENTRAL ILLINOIS EMERGENCY PHYSICIANS, LLP

By:_____
Derik K. King, MD, FACEP
Managing Partner

Date:_____

PHYSICIAN PARTNER:
Sam Gaines P C
(Sam Gaines, MD, FACEP)

By:_____
Sam Gaines P C
(Sam Gaines, MD, FACEP)

Date:_2 - 3 - 2011_____

post marked, to the following addresses:

    Partnership:

        Illinois Emergency Physicians, LLP
        4075 Copper Ridge Drive
        Traverse City, Michigan 49684-4796

    Physician Partner:

        Mark L. Day, MD
        907 N 10th St
        Vandalia, Illinois  62471-1631

    17.    ASSIGNMENT AND DELEGATION.  The Partnership Agreements are personal to Physician Partner and any duties or obligations hereunder may not be assigned by Physician Partner, nor may the Physician Partner's duties be delegated, without prior written consent of the Partnership.  If Physician Partner is a Professional Corporation, only the individual signing on behalf of the Professional Corporation may provide clinical services contemplated in the Partnership Agreements.

    IN WITNESS WHEREOF, the parties have executed the Partnership Agreements effective the day and date first above written.

        PARTNERSHIP:
        ILLINOIS EMERGENCY PHYSICIANS, LLP

        By:_____
        Derik K. King, MD, FACEP
        Managing Partner

        Date:_2/10/2011_____

        PHYSICIAN PARTNER:
        Mark L. Day, MD

        By:_____
        Mark L. Day, MD

        Date:_____

ADDENDUM:  COMPENSATION
PHYSICIAN PARTNERSHIP AGREEMENT

FACILITY/HOURS

Physician Partner shall schedule, on an annual average, the following hours per month at the following facility(s):

128 hours per month at St. John's Hospital, ED, in Springfield, Illinois
0-80 hours per month at St. John's Hospital, ED SOUTH, in Springfield, Illinois

GUARANTEED PARTNERSHIP PAYMENTS

Physician Partner shall be compensated as follows:

ST. JOHN'S HOSPITAL - ED

The base hourly rate will be  $       per hour.
Physician Partner shall receive additional compensation as outlined in the current Partnership Compensation Plan (attached), as may be amended from time to time in the sole discretion of Partnership.

ST. JOHN'S HOSPITAL - ED SOUTH

The base hourly rate will be  $       per hour.
Physician Partner shall receive additional compensation as outlined in the current Partnership Compensation Plan (attached), as may be amended from time to time in the sole discretion of Partnership.

Please reference Plan Documents for details of 401(k) program.
This Addendum supplements the Partnership Agreements governing the undersigned, effective January 1, 2011.


PARTNERSHIP:
CENTRAL ILLINOIS EMERGENCY PHYSICIANS, LLP


By:_____
Derik K. King, MD, FACEP
Managing Partner

Date:_____



PHYSICIAN PARTNER:
Sam Gaines P C
(Sam  Gaines, MD, FACEP)

Signed:_____
Sam Gaines P C
(Sam  Gaines, MD, FACEP)

Date:  2 - 3 - 2011

ADDENDUM: COMPENSATION
PHYSICIAN PARTNERSHIP AGREEMENT

FACILITY/HOURS

Physician Partner shall schedule, on an annual average, the following hours per month at the following facility(s):

0-48 hours per month at Community Memorial Hospital, ED, in Staunton, Illinois

GUARANTEED PARTNERSHIP PAYMENTS

Physician Partner shall be compensated as follows:

COMMUNITY MEMORIAL HOSPITAL - ED

The base hourly rate will be $          per hour.

Illinois Emergency Physicians, LLP may provide an Incentive Physician Bonus Plan for Physician Partners. The terms and conditions of the Plan may be changed, altered, and/or discontinued at the discretion of the Managing Partner.  Physician Partners will remain eligible for the program as long as they are working when the bonuses are distributed.

Please reference Plan Documents for details of 401(k) program.
This Addendum supplements the Partnership Agreements governing the undersigned, effective March 1, 2011.


PARTNERSHIP:
ILLINOIS EMERGENCY PHYSICIANS, LLP


By:
Derik K. King, MD, FACEP
Managing Partner

Date: 2/10/2011


PHYSICIAN PARTNER:
Mark L. Day, MD

Signed:
Mark L. Day, MD

Date:

**Compensation**   **Central Illinois Emergency Physicians, LLP**

**Model**   Effective October 1, 2009

**Summary**

Physician Partners providing clinical services at St. John's Hospital – Springfield, Illinois, shall be compensated as follows:

1)   An hourly base rate as may be determined and updated from time to time.

2)   An hourly holiday bonus as may be determined and updated from time to time for the following holidays:
   - New Year's Day
   - Memorial Day
   - July 4th
   - Labor Day
   - Thanksgiving
   - Christmas Eve
   - Christmas Day
   - New Year's Eve

3)   Central Illinois Emergency Physicians, LLP will provide a productivity-based Physician Bonus Plan for Physician Partners. The Plan will be funded based on hours of coverage provided each month by the group and distributed monthly, calculated on the patients seen per hour on a physician-specific basis, adjusted by individual patient satisfaction scores and completed patient records. Physician Partners will remain eligible for the Plan as long as they are working when the bonuses are distributed.

The terms and conditions of the plan may be changed, altered and or discontinued at the discretion of the Managing Partner.

Derik K. King, MD, FACEP
Managing Partner

Revised September 14, 2009

# AGREEMENT FOR EMERGENCY DEPARTMENT
## MANAGEMENT SERVICES

THIS IS AN AGREEMENT FOR EMERGENCY DEPARTMENT MANAGEMENT SERVICES, effective October 1, 2001, by and between St. John's Hospital of Springfield, Illinois, ("Hospital"), and Central Illinois Emergency Physicians, L.L.P., a limited liability partnership authorized to provide professional medical services in state of Illinois, of Traverse City, Michigan ("Partnership").

### A.     BACKGROUND

1.      Partnership is in the business of providing contract physician staffing, management and consulting services; and

2.      Hospital desires to retain the services of Partnership upon the terms and conditions set forth herein.

### B.     AGREEMENT

In consideration of the terms and conditions set forth therein, together with other good and valuable consideration, the receipt of which is hereby acknowledged, the parties agree as follows:

1.      Appointment.  Hospital hereby appoints and Partnership accepts the appointment to provide contract physician and physician extender staffing, management and consulting services upon the terms and conditions set forth herein.

2.      Status of Partnership and Physicians/Physician Extenders.  The parties acknowledge that the Partnership and the physicians and physician extenders provided by it are independent contractors as to the Hospital for the furnishing of the services contemplated herein.  The physicians and physician extenders supplied by the Partnership shall not be deemed to be employees of the Hospital and shall not be eligible for any employment benefit programs of the Hospital.  The physicians and other personnel supplied by the Hospital shall not be deemed to be employees of the Partnership and shall not be eligible for any benefit programs of the Partnership.  Except to the extent that practice and professional conduct of the Hospital medical staff members are regulated by the Hospital, the physicians and physician extenders supplied by the Partnership shall not be under the direction or supervision of the Hospital in the performance of their medical services.

j:\wpdata\eci.wrk\corp.wrk\Agreement FFS2.doc

1



EXHIBIT
B

3.   Term.  This Agreement shall have an initial term of three (3) years beginning on October 1, 2001, AND SHALL AUTOMATICALLY CONTINUE FOR SUCCESSIVE ONE (1) YEAR TERMS UNLESS SOONER TERMINATED AS PROVIDED HEREIN.

4.   Termination.  This Agreement may be terminated as follows:

a.   By either Hospital or Partnership, with or without cause, upon sixty (60) days written notice; or

b.   By either Partnership or Hospital, upon material breach (other than for non-payment by Hospital) of this Agreement upon thirty (30) days written notice of the material breach, provided, however, that the breaching party has the opportunity to effect a cure of the material breach within that thirty (30) day period to the satisfaction of the non-breaching party; or

c.   By Partnership, upon fifteen (15) days written notice, for non-payment of compensation as per Paragraph 7.

5.   Duties of Partnership.  Partnership shall perform the following duties and services:

a.   Basic Services.  Partnership shall recruit and schedule Partnership physician(s) and/or physician extender(s) to staff the Hospital emergency department during the following hours of operation:

Daily there will be approximately 74 hours per day of physician and physician extender coverage in the emergency department and in the Fast Track, which equals approximately 27,010 total annual hours of coverage.

b.   Procurement of Physicians/Physician Extenders.  The Partnership shall make available sufficient licensed physicians and physician extenders to perform and complete the duties of the Partnership in maintaining the services required under this Agreement.  Each physician and physician extender supplied by Partnership shall apply for and shall be governed by medical staff privileges at Hospital as may be required by applicable Hospital by-laws, rules and regulations.  Upon request, Partnership shall supply to the Hospital current credentials and pertinent information regarding any physician or physician extender the Partnership contemplates will be assigned to the Hospital.

c.   Management Services.   Upon request, Partnership may also provide the following management services/programs to Hospital:

(1)   Quality Assessment/Risk Management Program;

(2)   Reimbursement/billing advice and expertise;

(3)   Marketing advice and assistance;

j:\wpdata\eci.wrk\corp.wrk\Agreement FFS2.doc

2

    (4)  Assistance with JCAHO compliance/audits;

    (5)  Education advice and assistance;

    (6)  Patient satisfaction guarantee program;

    (7)  Cost containment advice and assistance;

d.  Medical Director. Partnership shall recruit and supply, in consultation with Hospital, a Medical Director to oversee and manage emergency department operations and to perform such duties and responsibilities as the parties may mutually agree in good faith.

e.  Removal of Partnership Physician/Physician Extender. Partnership shall remove any Partnership supplied physician or physician extender from the schedule upon written request of Hospital. If a Partnership supplied physician/physician extender is removed with less than thirty (30) days written notice, then Partnership shall be excused from any failure or delay in its performance under this Agreement due to the unavailability of the removed physician or physician extender for a period of thirty (30) days after the written notice is received.

f.  Co-Termination of Staff Privileges. Partnership agrees that the medical staff privileges of each physician or physician extender supplied by it shall automatically terminate, without hearing or other due process as may be provided in the medical staff by-laws, rules or regulations, upon the following:

    (1)  Upon termination of this Agreement;

    (2)  Upon termination of any physician or physician extender agreement for staffing services with Partnership;

g.  Compliance with Applicable Law. Partnership and its contracting healthcare providers shall at all times comply with all applicable federal, state and local statutes and regulations.

h.  Authority of Partnership and Physicians/Physician Extenders. Partnership and its contracting physicians or physician extenders shall not represent themselves as employees or agents of the Hospital and none shall have the authority to bind or obligate the Hospital.

i.  Compliance with Trauma Center Code. Partnership acknowledges that Hospital is a State of Illinois Department of Public Health designated Level II trauma center, and Partnership shall use its best efforts in recruiting and scheduling Partnership supplied physicians or physician extenders to comply with the Illinois Trauma Center Code for emergency physicians or physician extenders (77 Ill. Admin. Code Section 540.80(f)(1)(A)(i)(ii)(iii).

j:wpdata\cci.wrk\corp.wrk\Agreement FFS2.doc

       j.      <u>Emergency Department Charting</u>.  Partnership shall provide the hardware and software necessary to operate the emergency department charting system ("QualChart System®") including, without limitation, computer(s), printer(s), modem(s) and such other equipment and software as may be necessary, which shall remain the property of Partnership, and shall be identified, in writing, to hospital.

       k.      <u>Managed Care Contracting</u>.  Partnership agrees to negotiate in good faith to enter into agreements with Managed Care Plans  that the Hospital participates with in order to secure mutually beneficial Managed Care contracts for physician services.

       l.      <u>Physician Extender Requirements</u>.  Advance Practice Nurses shall each have a collaborative agreement with a collaborating physician provided by the Partnership.    Physician Assistants shall have a supervising physician supplied by the Partnership.  Each physician extender shall be in compliance with the Illinois Advance Practice Nurse Act, or the Illinois Physician Assistant Practice Act, as well as all Hospital policies and regulations and the Medical Staff By-laws and shall be under the direction and supervision of a Partnership physician at all times.

6.      <u>Duties of Hospital</u>.  Hospital shall perform the following duties and services:

       a.      <u>Facilities and Support Staff</u>.   Hospital shall provide, at its expense, adequate facilities, equipment and support personnel to effectively operate the emergency department.

       b.      <u>Medical Records</u>.   Hospital, at its expense, shall provide and maintain an adequate system of medical record keeping and retrieval.  Medical records shall, at all times, remain the property of Hospital.

       c.      <u>Support Services</u>.  Hospital, at its expense, shall provide appropriate support services, including but not limited to, assisting with transfers of patients to other facilities, preparing and filing patient forms necessary to the operation of the emergency department, scheduling and procuring on-call specialists, together with any other support services as may be reasonably requested by Partnership or by Partnership supplied physicians or physician extenders.

       d.      <u>Notice of Merger/Sale</u>.   Hospital agrees to provide Partnership at least ninety (90) days written notice of any contemplated sale, merger, closure or insolvency by or of the Hospital.

       e.      <u>On-Call Room</u>.  Hospital shall provide, at its expense, an adequate on-call room for use by Partnership supplied physicians and physician extenders including,

j:\wpdata\eci.wrk\corp.wrk\Agreement FFS2.doc

without limitation, adequate furnishings, a bed, linens, telephone service and television.

f.  <u>Removal/Transfer of Hospital Personnel</u>.   Upon request by Partnership, Hospital shall consider, in good faith, removal or transfer any Hospital supplied personnel whom Partnership deems not qualified by training, skill, temperament or conduct.

g.  <u>Reports to Partnership</u>.   The Hospital shall immediately report to the Partnership any disciplinary proceedings initiated against a Partnership supplied physician or physician extender under the bylaws of the Hospital and/or their medical staff.  The parties shall keep each other informed of any conduct or activities of such physicians or physician extenders which may impair their ability to perform services at the Hospital or which may adversely reflect upon their professional conduct, competence or ethics.

h.  <u>Patient Census</u>.  At the end of each month, and at the end of each calendar year of the Agreement, the Hospital shall provide the Partnership with a report for each respective period stipulating the number of patients seen by each Partnership physician or physician extender.  The information shall be provided to the Partnership on forms mutually approved by the Hospital and the Partnership.

i.  <u>Medical Records</u>.  Hospital agrees that it will provide the Partnership with a copy readable reproduction of the emergency department record and nurses' notes, which will include proper patient addresses and other necessary billing information.  If such billing information is deficient, the Hospital will cooperate with the Partnership's billing agent to establish the appropriate information on any emergency department record.  The Hospital shall mail copies of such records on a periodic basis to a designated address for processing and separate billing.   The expense of preparation and mailing of such copies shall be the obligation of the Hospital.

j.  <u>Electronic Demographic Information</u>.  Hospital agrees that within sixty (60) days of commencement of this Agreement, it will arrange for a periodic transmission (not less than once per week) of emergency department patient demographic billing information, including, without limitation: last name, first name, street address, city, state, zip code, age, marital status, sex, date of service, birth date, guarantor name and address, primary and secondary insurance company/payor (including address and contact number), telephone (home and work), social security number, employer, next-of-kin.  Such information shall be on an ASCII format per partnership specifications on a mutually agreeable medium (diskette, telephone transmission, etc.).

j:\wpdata\eci.wrk\corp.wrk\Agreement FFS2.doc

Hospital agrees to provide Partnership with on-line or dial-in access to its registration system for the Emergency Department to ensure availability of the latest and most accurate demographic informatio.

k.  Fast-Track Privileging.  Hospital agrees, during the term of this Agreement to use its best efforts to "Fast Track" credential, in accordance with its by-laws, all physician and physician extender candidates requested by Partnership.

m.  <u>Emergency Department Charting</u>.  Hospital shall provide the following relative to the QualChart System®:

- At least three (3) feet by two (2) feet of counter space in the emergency department in an easily accessible location for each installation site.

- A duplex electrical outlet, at the cost and expense of hospital, at each installation site.

- A dedicated direct dial-in telephone line in proximity to the duplex electrical plug and telephone number for the sole and exclusive use of the QualChart System® at each installation site.

- Management Information Systems contact person(s) to coordinate the installation/running/maintenance of the QualChart System® and to trouble shoot any problems, as necessary.

- Provide all QualChart System ® supplies, including, but not limited to printer paper and toner cartridges for the use of the QualChart System®.

Hospital acknowledges that the QualChart System® is the sole property of Partnership and is subject to applicable copyright and/or trademark protection. Hospital agrees that itself or any of its agents or employees will not copy, distribute, modify, adapt, translate, rent, loan, resale, network, or create any derivative works based on the software or otherwise attempt to usurp and use the QualChart System® for its own purpose or for that of its affiliates other than in the normal course of operating an emergency department during the term of this Agreement or at anytime thereafter.

7.  <u>Compensation</u>.  Partnership shall be compensated as follows:

a.  <u>Fee for Service</u>.  As compensation for providing professional services in the emergency department, the Partnership shall receive fee for service from all patients attended by Partnership physicians and physician extenders.

j:wpdata\eci.wrk\corp.wrk\Agreement FFS2.doc

b.  <u>Physician Services</u>.  Partnership, in consultation with Hospital, shall establish a schedule of fees for emergency physician/physician extender services rendered to patients under this Agreement.  The final decision of the schedule of fees shall be the Partnership's.

c.  <u>Related Services</u>.  The Hospital shall have the exclusive right to determine and establish its fees and charges to patients for the use of equipment, supplies, employees and emergency facilities under this Agreement.

d.  <u>Administrative Services and Physician Availability Stipend</u>.  Hospital agrees to pay to Partnership an annual stipend $       for administrative and physician/physician extender availability services provided in the emergency department, payable in twelve (12) equal monthly installments ($       ) on or before the 1st day of each month, beginning October 1, 2001.

e.  <u>Additional Expenses Relating to Medical Staff Membership</u>.  Hospital agrees to reimburse Partnership for any expenses relating to obtaining medical staff membership by Partnership physicians and physician extenders, including, without limitation, staff dues, immunizations or laboratory testing procedures.

f.  <u>Late Fees</u>.  Hospital shall pay Partnership a late fee of 1.2% per month (compounded monthly) on any unpaid balance over 15 days late from the date of the invoice.

8.  <u>Invoice Procedures/Compliance</u>.

a.  <u>Invoice Procedures for Services</u>.  The Partnership shall bill patients and/or third party payors directly for professional services rendered by Partnership supplied physicians and physician extenders.  All patients treated or examined by Partnership physicians and physician extenders will be considered patients of the Partnership and will be billed for each visit.  The Hospital shall have the exclusive right to charge patients and/or third party payors for the use of emergency facilities, equipment, supplies and employees and to bill accordingly.

b.  <u>Reimbursement Compliance</u>.  Each party shall comply with applicable law(s) affecting third party reimbursement to the other party.  All services provided by either party, their employees, agents and/or representatives shall be documented in a lawful and complete fashion so as to support proper coding of claims, and neither party shall perform any act or omission which adversely impacts such reimbursement or the other party's Medicare/Medicaid provider status.

Both parties shall:  1) exchange their respective compliance plans and comply with the other party's plan (to the extent possible), and to work in good faith to resolve any inconsistencies; 2) exchange and publish the identity of the other's Compliance Officer and Hotline (if any); and 3) otherwise work cooperatively to ensure all coding and billing and other aspects of reimbursement are done in full compliance with all applicable laws, rules and regulations.

j:\wpdata\eci.wrk\corp.wrk\Agreement FFS2.doc

9. <u>Liability Insurance</u>. Partnership, at no cost to Hospital, shall ensure that personnel provided by it shall maintain professional liability insurance coverage (primary and excess) in an amount not less than $2,000,000 per occurrence and $4,000,000 annual aggregate (only $1,000,000 per occurrence and $3,000,000 annual aggregate will be provided until 11/1/01, at which time the full coverage will commence), subject to the terms and conditions of the individual policies. This coverage shall be on a claims-made basis with an unlimited extended reporting period or on an occurrence basis.

Hospital, at no cost to Partnership, shall ensure that: (a) all personnel provided by it shall maintain professional liability insurance coverage (primary and excess) in an amount not less than $2,000,000 per occurrence and $4,000,000 annual aggregate subject to the terms and conditions of the individual policies. This coverage shall be on a claims-made basis with an unlimited extended reporting period or on an occurrence basis; and (b) comprehensive general liability insurance with a limit of not less than one million dollars ($1,000,000) per person, claim or occurrence.

10. <u>Indemnification</u>. Partnership agrees to indemnify and hold harmless Hospital from and against any and all claims, actions, causes of action, demands, liabilities, damages, costs and expenses, including actual and reasonable attorney fees, by reason of any act or omission of physician(s) /physician extender(s) provided by Partnership to the extent the applicable law recognizes a cause of action against the individual physician or physician extender, up to and including applicable professional liability policy limit(s) of said physician or physician extender as determined by its (their) insurer.

Hospital agrees to indemnify and hold harmless Partnership from and against any and all claims, actions, causes of action, demands, liabilities, damages, costs and expenses including actual and reasonable attorney fees, by reason of any act or omission of any healthcare provider(s) provided by Hospital, to the extent applicable law recognizes a cause of action against such healthcare provider(s), up to and including professional liability policy limit(s) of said healthcare provider(s) as determined by its (their) insurer.

This provision is in lieu of and supercedes, to the extent allowable by law, any statutory or case law right of indemnification.

11. <u>Contractual Noninterference</u>. Each party covenants that it shall not, during the term of this Agreement, directly or indirectly, impair or initiate any attempt to impair the relationship or expectancy of a continuing relationship which exists or will exist between the other party and the personnel employed or the physicians retained by the other party at any time during the term of their Agreement or renewals thereof, or make offers or contracts of employment or offers or contracts for services with such personnel or physicians/physician extenders, or with any partnership, corporation, or association through which such personnel or physicians or physician extenders may render services or employment to the offending party.

12. <u>Cooperation and Review of Activities</u>. The parties agree, in good faith, to cooperate with each other and to assist each other in the performance of this Agreement. The

j:wpdata\eci.wrk\corp.wrk\Agreement FFS2.doc

parties agree to meet at least each calendar quarter to review and discuss the course of performance of this Agreement.

13. <u>Excuse for Non-Performance or Breach</u>.  Neither party shall be liable or be deemed in breach of this Agreement for any failure or delay of performance which results, directly or indirectly, from acts of God, civil or military authority, public disturbance, accidents, fires or other casualty, strikes or other work interruptions, or any other cause beyond the reasonable control of either party.

14. <u>Severability</u>.  In the event any term or provision of this Agreement is found to be unenforceable or void, in whole or in part, than the offending term shall be construed as valid and enforceable to the maximum extent permitted by law and the balance of this Agreement shall remain in full force and effect.

15. <u>Governing Law</u>.  This Agreement shall be construed in accordance with the laws of the State of Illinois.

16. <u>Notices</u>.  Any notice required by this Agreement shall be effective on the date postmarked via certified mail to the following:

Partnership:

Central Illinois Emergency Physicians, L.L.P.
2240 S. Airport Road West
Traverse City, MI  49684

Hospital:

St. John's Hospital
800 East Carpenter Street
Springfield, IL  62769

17. <u>Modification</u>.  This Agreement contains the entire understanding of the parties and may not be modified except in writing and signed by both the parties hereto.

18. <u>Federal Government Access to Books and Records</u>.  To the extent required by Section 1861(v) of the <u>Federal Social Security Act</u>, 42 U.S.C. Sec. 1395(v), as amended from time to time, Partnership agrees as follows:

Until the expiration of four (4) years after the furnishing of services pursuant to the Agreement, Partnership shall make available, upon written request to the Secretary of Health and Human Services, or upon request to the Comptroller General, or any of their duly authorized representatives, this Agreement, and books, documents and records of the Partnership that are necessary to certify the nature and extent of the costs claimed to Medicare with respect to the services provided under this Agreement.

j:wpdata\eci.wrk\corp.wrk\Agreement FFS2.doc

9

19.   Confidentiality.  The terms and provisions of this Agreement are deemed confidential to the parties hereto and shall be revealed only to the authorized management of said respective parties, or to governmental of supervisory officials or other parties where legally required to be revealed.  Under no circumstances, whatever, may either party disclose this Agreement or any portion hereof, to any individual of entity excepting its own authorized management, without first notifying the other party hereto in writing prior to such disclosure.

The parties have executed this Agreement for Emergency Department Management Services effective the day and date first above written.

Central Illinois Emergency Physicians, L.L.P.

By: _____

James M. Johnson, M.D.

Its:  Managing Partner

Date:  1/18/02

St. John's Hospital

By: _____

Richard Carlson, FACHE

Its:  Executive Vice-President & CEO

Date:  1/11/02

j:\wpdata\eci.wrk\corp.wrk\Agreement FFS2.doc

10

## AMENDMENT TO
## AGREEMENT FOR EMERGENCY DEPARTMENT
## MANAGEMENT SERVICES

THIS IS AN AMENDMENT TO AGREEMENT FOR EMERGENCY DEPARTMENT MANAGEMENT SERVICES, dated November 1, 2004, by and between St. John's Hospital of Springfield, Illinois, ("Hospital"), and Central Illinois Emergency Physicians, L.L.P., a limited liability partnership authorized to provide professional medical services in state of Illinois, of Traverse City, Michigan ("Partnership").

<u>Effective January 1, 2005:</u>

7 . d.   <u>Administrative Services and Physician Availability Stipend</u>.  Hospital agrees to pay to Partnership an annual stipend $          for administrative and physician/physician extender availability services provided in the emergency department, payable in twelve (12) equal monthly installments ($          ) on or before the 1st day of each month, beginning January 1, 2005.

<u>Effective October 1, 2004:</u>

9.   <u>Liability Insurance</u>.  Partnership shall ensure that personnel provided by it shall maintain professional liability insurance coverage in an amount not less than $1,000,000 per occurrence and $3,000,000 annual aggregate, subject to the terms and conditions of the individual policies.  This coverage shall be on a claims-made basis with an unlimited extended reporting period or on an occurrence basis. Partnership shall pay the base cost of the professional liability insurance during the term of this Agreement.  Hospital agrees to pay any incremental increase(s) in the professional liability insurance (at actual cost) during the term of this Agreement.  Partnership will invoice Hospital for any incremental increase(s), as incurred, which shall be payable in thirty (30) days.

Hospital, at no cost to Partnership, shall ensure that: (a) all personnel provided by it shall maintain professional liability insurance coverage in an amount not less than $1,000,000 per occurrence and

$3,000,000 annual aggregate subject to the terms and conditions of the individual policies. This coverage shall be on a claims-made basis with an unlimited extended reporting period or on an occurrence basis; and (b) comprehensive general liability insurance with a limit of not less than one million dollars ($1,000,000) per person, claim or occurrence.

Central Illinois Emergency Physicians, L.L.P.

By: _____

    James M. Johnson, M.D.

Its: Managing Partner

Date: 11/11/04

St. John's Hospital

By: _____

    Richard Carlson, FACHE

Its: Executive Vice-President & CEO

Date: 11/3/04

# SECOND AMENDMENT TO
## AGREEMENT FOR EMERGENCY DEPARTMENT MANAGEMENT SERVICES

This **Second Amendment to Agreement for Emergency Department Management Services** ("**Second Amendment**") is entered into by and between **St. John's Hospital of the Hospital Sisters of the Third Order of St. Francis**, an Illinois not-for-profit corporation ("**Hospital**") and **Central Illinois Emergency Physicians, L.L.P.**, a limited liability partnership authorized to provide professional medical services in the State of Illinois ("**Partnership**").

### WITNESSETH:

**WHEREAS,** the parties previously entered into an Agreement for Emergency Department Management Services ("**Agreement**"), effective the 1st day of October, 2001; and

**WHEREAS,** the parties entered into a First Amendment to Agreement for Emergency Department Management Services, effective the 1st day of November, 2004; and

**WHEREAS,** the parties wish to further amend the Agreement as described herein; and

**WHEREAS,** the parties agree to extend the term of the Agreement for a period of three (3) years from the date of this Second Amendment and to work in good faith to enter into a comprehensive new agreement for Partnership's provision of emergency department staffing, management, and consulting services on behalf of Hospital by the expiration of the three (3) year anniversary of the effective date of this Second Amendment.

**NOW, THEREFORE,** in consideration of the mutual covenants contained herein, the parties agree as follows:

1.    **Amendment – Termination.**   Section 4 shall be deleted in its entirety and replaced with the following language:

"a.    <u>Termination by Agreement</u>. This Agreement may be terminated by mutual written agreement of the parties.

b.    <u>Early Termination</u>.   This Agreement may be terminated by either party with or without cause or penalty by delivering written notice of termination to the other party at least one hundred twenty (120) days prior to such early termination.   If this Agreement is terminated prior to the one (1) year anniversary of this Second Amendment, then the parties shall not enter into a substantially similar agreement until the expiration of the one (1) year anniversary of this Second Amendment.

c.    <u>Immediate Termination</u>.   Hospital may immediately terminate this Agreement, by providing written notice to Partnership, upon:

1116799v5

(1) Limitation, suspension or termination of Partnership's authority in the State of Illinois to provide services under this Agreement for any reason;

(2) Failure by Partnership to comply with all applicable federal, state, or local laws and regulations;

(3) Conviction of a Partnership owner for the commission of a felony or a crime involving fraud or dishonesty;

(4) Engagement of Partnership in any conduct that jeopardizes or threatens to jeopardize the health or safety of patients;

(5) Engagement of Partnership in any grave misconduct, gross incompetence or gross malfeasance, or a material violation of the professional canons of ethics by Partnership;

(6) Failure of Partnership to qualify for insurance as detailed in this Agreement;

(7) Cessation of any of the representations or warranties in Section 22 to be true; or

(8) Engagement of Partnership in any conduct that would be detrimental to the mission and/or reputation of Hospital.

d. <u>Termination With Cause</u>.  In the event either party commits a material breach of any of the provisions of this Agreement, the non-breaching party may terminate this Agreement upon thirty (30) days written notice; provided, however, that the breaching party shall have the right to cure such breach within thirty (30) days after written notice of such breach.  If cured, this Agreement shall continue in full force and effect.  Partnership, however, is only entitled to a notice of breach and opportunity to cure described in this Section once.  Any Partnership breach which occurs after the first notice shall be grounds for immediate termination by Hospital.  Any breach by a Partnership physician or physician extender shall be attributable to Partnership.

e. <u>Termination Due to Change of Law/Circumstances</u>. Notwithstanding anything herein to the contrary, if on the advice of legal counsel: (i) a party determines that this Agreement may be interpreted to violate any present or future Law (as defined in Section 20); or (ii) Hospital determines that a Law precludes it (as a result of this Agreement) from billing Medicare or another Federal Health Care Program (as defined in 42 U.S.C. § 1320a-7b(f)) for Hospital services; the party making such determination may terminate this Agreement upon thirty (30) days advance written notice of the intent to terminate and the basis for the determination to the other party.  The parties shall use good faith efforts during such thirty (30) day period to avoid termination by amending this Agreement in such a manner so that it complies with applicable Law and/or does not preclude Hospital from billing a Federal Health Care Program, as applicable.

In the event (i) Medicare, Medicaid, any third party payor or any federal, state or local legislative or regulatory authority adopts any law, rule, regulation, policy, procedure or interpretation thereof which establishes a material change in the

1116799v5

method or amount of reimbursement or payment for Services under this Agreement, or if (ii) any or all of such payers/authorities impose requirements which require a material change in the manner of either party's operations under this Agreement and/or the costs related thereto, then, upon the request of either party materially affected by any such change in circumstances, the parties shall enter into good faith negotiations for the purpose of establishing such amendments or modifications as may be appropriate in order to accommodate the new requirements and change of circumstances while preserving the original intent of this Agreement to the greatest extent possible. If, after thirty (30) days of such negotiations, the parties are unable to reach an agreement as to how or whether this Agreement shall continue, then either party may terminate this Agreement upon thirty (30) days' prior written notice."

2.      **Amendment – Basic Services.** Subsection 5.a of the Agreement shall be deleted in its entirety and restated as follows:

"Partnership shall recruit and schedule Partnership physicians and/or physician extenders to staff the Hospital emergency department during the following hours of operation:

Daily there will be approximately 56 hours per day of physician coverage in the emergency department and in the Fast Track, which equals no less than 20,258 total annual physician hours of coverage. Daily there will be approximately 27 hours per day of physician extender coverage in the emergency department and in the Fast Track, which equals no less than 9,855 total annual physician extender hours of coverage.

Notwithstanding anything to the contrary to this agreement, Partnership agrees to provide physicians and physician extenders for the operating hours established by Hospital in Hospital's sole discretion."

3.      **Amendment – Procurement of Physicians/Physician Extenders.** Subsection 5.b of the Agreement shall be amended to include the following additional language:

"Each physician of Partnership assigned to provide services required under this Agreement shall be board certified or, if Hospital provides prior consent, board eligible with completion of certification within twelve (12) months of physician contracting with Partnership in Emergency Medicine, Family Medicine, Internal Medicine and/or Pediatric Medicine. Each physician extender of Partnership assigned to provide services required under this Agreement shall be trained and experienced in emergency medicine. Any Partnership physician or physician extender appointed by Partnership to provide services under this Agreement, including the selection of the Medical Director described in Section 5.d of this Agreement, shall be subject to Hospital's prior approval."

4.      **Amendment – Removal of Partnership Physician/Physician Extender.** Subsection 5.e of the Agreement shall be amended to include the following additional language:

3

1116799v5

"Notwithstanding the foregoing, Hospital reserves the right to immediately terminate a Partnership physician or physician extender from participation under this Agreement for any of the following reasons:

(1) Limitation, suspension, or termination of a physician's or physician extender's medical staff privileges at Hospital for any reason;

(2) Limitation, suspension, or revocation of a physician's or physician extender's license to practice medicine in the State of Illinois;

(3) Limitation, suspension, or revocation of a physician's or physician extender's federal or state registration to prescribe or dispense controlled substances;

(4) Failure by a physician or physician extender to comply with all applicable federal, state, or local laws and regulations;

(5) Conviction of a physician or physician extender for the commission of a felony or a crime involving fraud or dishonesty;

(6) Engagement of a physician or physician extender in any conduct that jeopardizes or threatens to jeopardize the health or safety of patients;

(7) Engagement of a physician or physician extender in any grave misconduct, gross incompetence or gross malfeasance, or a material violation of the professional canons of ethics by a physician;

(8) Failure of a physician or physician extender to qualify for insurance as detailed in this Agreement;

(9) Cessation of any of the representations or warranties in Section 22 to be true; or

(10) Engagement of a physician or physician extender in any conduct that would be detrimental to the mission, core values, and/or reputation of Hospital.

In the event a Partnership physician or physician extender is terminated by Hospital from participating in this Agreement pursuant to this Section, Partnership shall promptly replace such physician or physician extender with a qualified physician mutually agreeable to Partnership and Hospital."

**5.** **Amendment – Removal of Partnership Physician.** Section 5 of the Agreement shall be amended to include the following additional Subsection 5.m:

"m. Prior to the one (1) year anniversary of this Second Amendment, Partnership shall collaborate with Hospital to develop quality metric targets based on benchmark data and Hospital's performance goals ("Quality Metrics").

**6.** **Amendment – Administrative Services and Physician Availability Stipend.** Subsection 7.d is hereby deleted in its entirety and restated as follows:

"Hospital agrees to pay to Partnership an annual stipend of                and 00/100 Dollars ($             )

4

1116799v5

for administrative and physician availability services provided in the emergency department, payable in twelve (12) equal monthly installments of ~~17/100 Dollars ($~~        ) on or before the 10th day of each month. To the extent additional staffing is required for additional coverage over the budgeted hours of coverage, Hospital shall compensate Partnership        00/100 Dollars ($        ) per hour for participating physicians and        00/100 Dollars ($        ) per hour for participating physician extenders; provided, however, that no such additional coverage shall be incurred unless the parties mutually agree, in advance, to such additional coverage, and the additional coverage is properly documented and invoiced by Partnership.   This compensation shall be Partnership's sole compensation for the services provided hereunder."

7.      **Amendment – Additional Provisions.** The Agreement shall be amended to add the following additional Sections after Section 19:

"20.    Compliance with Laws, Regulations, and Accreditation.  The parties believe and intend that this Agreement complies with all relevant federal and state laws as well as relevant regulations and accreditation standards, including but not limited to, Federal Health Care Program (as defined under 42 U.S.C. § 1320a-7b(f)) fraud and abuse laws (including the Anti-Kickback Statute) and the Stark Law, and all of the rules and regulations promulgated pursuant to, and all of the cases or opinions interpreting such statutes and laws (collectively, "Laws").

21.    Corporate Compliance Program.  Hospital has in place a System Responsibility Program (the "Program") which has as its goal, to ensure that Hospital complies with Laws.  The Program focuses on risk management, the prevention of misconduct and the promotion of good corporate citizenship, including the commitment to uphold a high standard of ethical and legal business practices. Partnership and its physicians acknowledge Hospital's commitment to the Program and agree to conduct all activities which occur pursuant to this Agreement in accordance with the underlying philosophy of the Program.

22.    Exclusion from State or Federal Health Care Programs.  Each party and the participating physicians represent and warrant that they are not: excluded from participation in any Federal Health Care Program; debarred, suspended or otherwise excluded from participating in any other federal or state procurement or nonprocurement program or activity; or designated a Specially Designated National or Blocked Person by the Office of Foreign Asset Control of the U.S. Department of Treasury. Each party and the participating physicians further represent and warrant that to their knowledge, there are no pending or threatened governmental investigations that may lead to such exclusion.  Partnership shall notify Hospital in writing upon the commencement of any such exclusion or investigation of Partnership or a participating physician within seven (7) business days of receiving first notice of such exclusion or investigation. Hospital shall

1116799v5

5

have the right to terminate this Agreement immediately upon learning of any such exclusion and shall be kept informed of the status of any such investigation.

23.  No Inducement to Refer. Neither Partnership nor the participating physicians are obligated or required to refer any patients to Hospital, or any affiliate of Hospital, to obtain or receive any medical diagnosis, care or treatment from Hospital, or to purchase any health care related services or products from Hospital. The parties are not entering into this Agreement with an expectation that any unlawful patient referrals will occur or other business will be generated between the parties or between Hospital and a participating physician.

24.  Ethical and Religious Directives. The parties acknowledge that Hospital is operated in accordance with the *Ethical and Religious Directives for Catholic Healthcare Services* as promulgated, from time to time, by the United States Conference of Catholic Bishops, Washington, D.C., of the Roman Catholic Church ("Ethical and Religious Directives"), and that the principles and beliefs of the Roman Catholic Church are a matter of conscience to Hospital. It is the intent and agreement of the parties that neither this Agreement nor any part hereof shall be construed to require Hospital to violate said Ethical and Religious Directives in its operation and all parts of this Agreement must be interpreted in a manner that is consistent with said Ethical and Religious Directives. Partnership shall ensure that each physician provides all services hereunder in accordance with the Ethical and Religious Directives."

8.  **Effect of Amendment.** This Second Amendment to the Agreement shall be incorporated into and made a part of the Agreement. All provisions of the Agreement not expressly modified or amended herein shall remain in full force and effect.

9.  **Defined Terms.** Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Agreement.

10.  **Effective Date.** This Second Amendment shall be effective as of October 1, 2011.

*[Signature Page Follows]*

1116799v5

**IN WITNESS WHEREOF**, the duly authorized representatives of Hospital and Partnership have executed this Second Amendment to the Agreement on the dates written below.

**ST. JOHN'S HOSPITAL**

By: _____

Name: _____

Title: _____

Date: _9/28/11_____

**CENTRAL ILLINOIS EMERGENCY PHYSICIANS, LLP**

By: _____

Name: _Devik King MD_____

Title: _Managing Partner___

Date: _9.29.11_____

7

1116799v3

## THIRD AMENDMENT TO
## AGREEMENT FOR EMERGENCY DEPARTMENT MANAGEMENT SERVICES

This **Third Amendment to Agreement for Emergency Department Management Services** ("**Third Amendment**") is entered into by and between **St. John's Hospital of the Hospital Sisters of the Third Order of St. Francis**, an Illinois not-for-profit corporation ("**Hospital**") and **Central Illinois Emergency Physicians, L.L.P.**, a limited liability partnership authorized to provide professional medical services in the State of Illinois ("**Partnership**").

### WITNESSETH:

**WHEREAS**, the parties previously entered into an Agreement for Emergency Department Management Services ("**Agreement**"), effective the 1st day of October, 2001; and

**WHEREAS**, the parties entered into a First Amendment to Agreement for Emergency Department Management Services, effective the 1st day of November, 2004; and

**WHEREAS**, the parties entered into a Second Amendment to Agreement for Emergency Department Management Services, effective the 1st day of October, 2011; and

**WHEREAS**, the parties wish to further amend the Agreement as described herein.

**NOW, THEREFORE**, in consideration of the mutual covenants contained herein, the parties agree as follows:

1.     **Amendment – Liability Insurance.**  Section 9 shall be deleted in its entirety and replaced with the following language:

"9.     Liability Insurance.  Partnership, at no cost to Hospital, shall ensure that all personnel provided by Partnership under this Agreement shall maintain professional liability insurance coverage in an amount not less than $1,000,000 per occurrence and $3,000,000 in the annual aggregate, subject to the terms and conditions of individual policies.  This coverage shall be on a claims-made basis with an unlimited extended reporting period or on an occurrence basis.

Hospital, at no cost to Partnership, shall ensure that: (a) all personnel provided by Hospital under this Agreement shall maintain professional liability insurance coverage in an amount not less than $1,000,000 per occurrence and $3,000,000 in the annual aggregate subject to the terms and conditions of the individual policies.  This coverage shall be on a claims-made basis with an unlimited extended reporting period or on an occurrence basis; and (b) comprehensive general liability insurance with a limit of not less than $1,000,000 per person, claim or occurrence."

1

2.    **Effect of Amendment**.  This Third Amendment to the Agreement shall be incorporated into and made a part of the Agreement. All provisions of the Agreement not expressly modified or amended herein shall remain in full force and effect.

3.    **Defined Terms**.  Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Agreement.

4.    **Effective Date**. This Third Amendment shall be effective as of <u>October 1</u>, 20<u>11</u> .

IN WITNESS WHEREOF, the duly authorized representatives of Hospital and Partnership have executed this Third Amendment to the Agreement on the dates written below.

**ST. JOHN'S HOSPITAL**

By: _____

Name: _Robert P. Ritz_

Title: _President + CEO_

Date: _12/22/11_

**CENTRAL ILLINOIS EMERGENCY PHYSICIANS, LLP**

By: _____

Name: _Derik King MD_

Title: _Managing Partner_

Date: _12/15/11_

2

```
DATE. 06/16/13 @ 0105          St. John's Springfield EDM LIVE                    PAGE 1
USER: APERKTIF                        ED Patient Record

RPT: EDYNCHT   Location: ED        ED Room:                      Acct No: Y00001107519
Patient: JONES,LANCE S             Age/Sex: 36/M                 Unit No: MA01247496
ED Provider: GAINES,SAM, MD        DOB: 07/30/1976               Facility: SJS
```

---

**Demographic**

```
#1 SHERIFFS PLAZA
SPRINGFIELD, IL 62703
(217)753-6666
Insurance: LOCAL CORRECTIONAL FACILITIES        PCP: UNKNOWN,PRIMARY CARE PHYS
Next of Kin: CRAWFORD,CARMALIA                  Family Doctor:
 Relation: OTHER RELATIONSHIP                   Referring:
 Phone: (217)753-6666
```

### General Data

```
ED Physician: GAINES,SAM, MD, PHYS        Arrival Date/Time: 06/15/13 - 0939
Practitioner:                             Triage Date/Time: 06/15/13 - 0940
Nurse: Alyson Stastny, RN                 Date of Birth: 07/30/1976

Stated Complaint: CP
Chief Complaint: Chest Pain               Priority: 3
Status Event History:
     06/15/13  0940 Triaged
               1000 Patient in assigned location
               1112 In Stress Lab
               1344 Patient Returned to Room
               1443 New Orders for Transcription
               1444 Patient in assigned location
               1507 Patient ready for discharge
               1518 Bed is Dirty
               1522 Bed is Clean
               1522 Remove pat. from all trackers
```

### Allergies & Adverse Reactions

```
Allergies:
No Known Allergies
```

### Vital Signs

| Date/Time | Temperature (Celsius) | Pulse Rate | Resp Rate | Systolic | Diastolic | User |
|---|---|---|---|---|---|---|
| 06/15/13 0943 | 36.6 | 73 | 19 | 143 | 95 | APERKTIF, RN |
| 06/15/13 1032 | | 61 | 16 | 132 | 66 | ABUCHHEA, RN |
| 06/15/13 1110 | | 65 | 16 | 126 | 68 | ABUCHHEA, RN |
| 06/15/13 1354 | | 75 | 18 | 138 | 77 | ASTASALY, RN |

| Date/Time | O2 Sat by Pulse Oximetry | User |
|---|---|---|
| 06/15/13 0943 | 100 | APERKTIF, RN |
| 06/15/13 1032 | 98 | ABUCHHEA, RN |
| 06/15/13 1110 | 100 | ABUCHHEA, RN |
| 06/15/13 1354 | | ASTASALY, RN |
| 06/15/13 1354 | 98 | ASTASALY, RN |

### Assessments

```
06/15/13  0940    Triage Assessment                          Tiffany I Perkins, RN
 Subjective:
```

Patient: JONES,LANCE S



EXHIBIT
C

```
DATE: 06/16/13 @ 0105        St. John's Springfield EDM LIVE                PAGE 2
USER: APERKTIF                    ED Patient Record
```

| | | |
|---|---|---|
| RPT: EDYNCHT   Location: ED | ED Room: | Acct No: Y00001107519 |
| Patient: JONES,LANCE S | Age/Sex: 36/M | Unit No: MA01247496 |
| ED Provider: GAINES,SAM, MD | DOB: 07/30/1976 | Facility: SJS |

Complaint Related Notes  PT PRESENTS BY AMBULANCE FROM THE COUNTY JAIL. PT STATES HE WOKE UP
                         AROUND WITH CHEST PAIN. MEDICS STATE THEY WERE TOLD PT WAS
                         DIAPHORETIC UPON JAIL STAFF ARRIVAL. MEDIC STATES THEY HAVE HIM ASA
                         X4 AND 1 NITRO. STATES THE OXYGEN TOOK HIS PAIN FROM A 10/10 TO A
                         6/10 AND THE NITRO TOOK HIS PAIN DOWN TO A 3/10. EKG ENROUTE SHOWED
                         SR. C/O SOB & NAUSEA
Complaint or Evidence of Pain or Distress Y
Objective:
Level of Consciousness Alert, Awake
Orientation Oriented x3
Patient Behavior Appropriate
Skin Temperature Warm
Skin Color Race Appropriate
Skin Moisture Dry
Respiratory Effort Non-Labored
Respiratory Pattern Regular
Ambulation Ability Acutely Non-ambulatory
Speech Clear
Other:
Accompanied By EMS Personnel

*06/15/13  0940    Pain Assessment*                        *Tiffany L Perkins, RN*
Pain Presence:
Complaint or Evidence of Pain or Distress Y
Pain Record:
Location Modifier Middle
Pain Location Chest
Current Intensity 3
Pain Scale Used Number Scale

*06/15/13  0943    Height/Weight (Metric)*                 *Tiffany L Perkins, RN*
Height:
Height (Centimeters) 172.7
Weight:
Weight (Kilograms) 110.9
Weight (Calculated Grams) 110900.0
Type of Scale Used to Obtain Weight Stated
Pregnancy & Lactation Information:
Pregnant Now N
History of Pregnancy Within Last 3 Months N
Currently Lactating N

*06/15/13  0943    Vital Signs-Adult*                      *Tiffany L Perkins, RN*
Temperature:
Temperature (Celsius) 36.6
Temperature (Calculated Celsius) 36.60
Source Oral
Pulse:
Pulse Rate 73
Rhythm Regular
Method Monitor
Respirations:
Resp Rate 19
Blood Pressure/Orthostatic Pulse:
Location Right Arm

Patient: JONES,LANCE S

```
DATE: 06/16/13 @ 0105      St. John's Springfield EDM LIVE          PAGE 3
USER: APERKTIF                  ED Patient Record
```

```
RPT: EDYNCHT   Location: ED      ED Room:                Acct No: Y00001107519
Patient: JONES,LANCE S           Age/Sex: 36/M           Unit No: MA01247496
ED Provider: GAINES,SAM, MD      DOB: 07/30/1976         Facility: SJS
```

Systolic 143
Diastolic 95
Mean 111
Source Automatic Cuff
Position Lying
Oxygen Delivery:
Oxygen Delivery Method Nasal Cannula
Supplemental O2 2 Liters
O2 Sat by Pulse Oximetry 100
SpO2 Episode Continuous Monitoring

*06/15/13  0944    History, Comprehensive*                    *Tiffany I Perkins, RN*
Neuro History:
History Neurological Problems Y
  Neurological History Traumatic Brain Injury
  Neuro Comment GSW TO HEAD 20 YEARS AGO
Fall History:
Any Fall History in Last 6 Months N
Cardiovascular History:
History of Cardiovascular Disease N
Respiratory History:
History of Respiratory Problems N
Gastrointestinal History:
History of GI Disorders Y
  Gastrointestinal History Gall Bladder Disease, Inflammatory Bowel Diseas
  Gastrointestinal History Comment GALLBLADDER REMOVED 2009
Genitourinary History:
History of GU Problems N
Musculoskeletal History:
History of Musculoskeletal Problems N
Skin History:
History of Skin Problems Y
  Skin Problems Tattoos
HEENT History:
History of HEENT Problems N
Endocrine History:
History of Endocrine Problems N
Abuse History:
History of Abuse N
Smoking History:
History of Tobacco Use Y
  History of Tobacco Use in the Past Year Y
  History of Tobacco Use in Past 30 Days N
  Current Tobacco Use Cigarettes
  Tobacco Use History Cigarettes
Psychosocial History:
Psychosocial History N
Drug History:
History of Drug Use N
Infectious Disease History:
History of Infectious Disease N
Autoimmune History:
History of Immune Problems Y
  Immune History HIV
Hematologic History:

```
Patient: JONES,LANCE S
```

```
DATE: 06/16/13 @ 0105        St. John's Springfield EDM LIVE                    PAGE 4
USER: APERKTIF                    ED Patient Record
```

```
RPT: EDYNCHT   Location: ED        ED Room:              Acct No: Y00001107519
Patient: JONES,LANCE S             Age/Sex: 36/M         Unit No: MA01247496
ED Provider: GAINES,SAM, MD        DOB: 07/30/1976       Facility: SJS
```

History of Blood Problems N
Cancer History:
History of Cancer N
Female/Male Problems:
Male/Female Problem N
Family Health History:
History of Family Health Problems Y
   Family Health History Cancer, Cardiac Disorders

*06/15/13  1002    ED Required Screening*                    *Heather N Buchanan, RN*
Advanced Directive:
Do You Have an Advance Directive No
Do You Have a Copy of your Advance Directive with You No
Do You Want to Complete an Advance Directive No
Abuse Screening:
   Current Abuse N
ED Nutrition Screening:
Without trying, Lost/Gained 10 Pounds in last 3 months N
On a special diet and does not understand the diet N
Fall History Screening:
History of Fall in Last 3 Months N
Altered Mental Status, ETOH, Dizzy, Confused N
Unsteady Gait, Injury, Use of Assist Device N
Fall Risk N
Suicide Risk Screening:
Is There Anything You Feel Hopeless Or Helpless About N
Are You Having Thoughts Today Of Wanting To Harm Yourself N
Have You Had Thoughts Of Harming Yourself In The Last Week N
Barriers to Learning:
Barriers to Learning None

*06/15/13  1002    Safety Measures*                         *Heather N Buchanan, RN*
Safety:
Safety Measures Call Light Within Reach, Patient Checked
Bed Settings Rails Up x 2
Wrist Band Alerts ID Band
Rounding Activity:
Rounding Activities Completed

*06/15/13  1030    Pain Assessment*                         *Heather N Buchanan, RN*
Pain Presence:
Complaint or Evidence of Pain or Distress Y
Pain Record:
Location Modifier Middle
Pain Location Chest
Current Intensity 1
Pain Scale Used Number Scale

*06/15/13  1030    General Reassessment*                    *Heather N Buchanan, RN*
Objective:
Level of Consciousness Alert
Orientation Oriented x3
Patient Behavior Appropriate, Calm, Cooperative
Skin Temperature Warm
Skin Color Race Appropriate

Patient: JONES,LANCE S

```
DATE: 06/16/13 @ 0105        St. John's Springfield EDM LIVE              PAGE 5
USER: APERKTIF                      ED Patient Record
```

```
RPT: EDYNCHT   Location: ED          ED Room:              Acct No: Y00001107519
Patient: JONES,LANCE S               Age/Sex: 36/M         Unit No: MA01247496
ED Provider: GAINES,SAM, MD          DOB: 07/30/1976       Facility: SJS
```

Skin Moisture Dry
Respiratory Effort Non-Labored
Respiratory Pattern Regular
Ambulation Ability Ambulatory
Gait Steady Gait
Speech Clear
<u>Additional Notes:</u>
Additional Notes PT RESTING ON STRETCHER AT TIME WITH EYES CLOSED. RESP EASY AND UNLABORED
                 AT TIME. LUNG SOUNDS CLEAR BIL. PT EASILY AROUSED TO VOICE. SANGOMON
                 COUNTY JAIL GUARD AT BEDSIDE. PT UPDATED ON PLAN OF CARE. WILL CONT TO
                 MONITOR.

*06/15/13  1032    Vital Signs-Adult*                          *Heather N Buchanan, RN*
<u>Pulse:</u>
Pulse Rate 61
Rhythm Regular
Pulse Location Apical
Method Monitor
<u>Respirations:</u>
Resp Rate 16
<u>Blood Pressure/Orthostatic Pulse:</u>
Location Left Arm
Systolic 132
Diastolic 66
Mean 88
Source Automatic Cuff
Position Sitting
<u>Oxygen Delivery:</u>
Oxygen Delivery Method Nasal Cannula
O2 Sat by Pulse Oximetry 98
SpO2 Episode Continuous Monitoring

*06/15/13  1110    Vital Signs-Adult*                          *Heather N Buchanan, RN*
<u>Temperature:</u>
<u>Pulse:</u>
Pulse Rate 65
Rhythm Regular
Pulse Location Apical
Method Monitor
<u>Respirations:</u>
Resp Rate 16
<u>Blood Pressure/Orthostatic Pulse:</u>
Location Left Arm
Systolic 126
Diastolic 68
Mean 87
Source Automatic Cuff
Position Sitting
<u>Oxygen Delivery:</u>
Oxygen Delivery Method Nasal Cannula
Supplemental O2 2 Liters
O2 Sat by Pulse Oximetry 100
SpO2 Episode Continuous Monitoring

```
Patient: JONES,LANCE S
```

```
DATE: 06/16/13 @ 0105        St. John's Springfield EDM LIVE         PAGE 6
USER: APERKTIF                       ED Patient Record

RPT: EDYNCHT   Location: ED        ED Room:              Acct No: Y00001107519
Patient: JONES,LANCE S             Age/Sex: 36/M         Unit No: MA01247496
ED Provider: GAINES,SAM, MD        DOB: 07/30/1976       Facility: SJS
```

*06/15/13   1129    Provider Note*                                  *Alyson Stastny, RN*
Provider Note:
Provider Note assumed care of pt at this time recieved report from h. buchanan, rn. PT IN
         STRESS TEST AT THIS TIME.

*06/15/13   1354    Education Record*                               *Alyson Stastny, RN*
Education Topic:
Education Topic Safety
Method Verbal Instruction
Education CALLBELL
Recipient Patient
Ready to Learn Y
Barriers to Learning None
Response to Teaching Asks Questions, Verbalizes Understanding

*06/15/13   1354    Pain Assessment*                                *Alyson Stastny, RN*
Pain Presence:
Complaint or Evidence of Pain or Distress N
Pain Record:
Location Modifier Middle
Pain Location Chest

*06/15/13   1354    Safety Measures*                                *Alyson Stastny, RN*
Safety:
Safety Measures Call Light Within Reach, Close to Nursing Station, Frequent Observation,
         Patient Checked
Bed Settings Bed in Low Position, Bed Locked, Rails Up x 2
Wrist Band Alerts ID Band
Safety Comments GUARD AT BEDSIDE
Rounding Activity:
Rounding Activities Completed

*06/15/13   1354    Vital Signs-Adult*                              *Alyson Stastny, RN*
Pulse:
Pulse Rate 75
Method Oximeter
Respirations:
Resp Rate 18
Blood Pressure/Orthostatic Pulse:
Location Left Arm
Systolic 138
Diastolic 77
Mean 97
Source Automatic Cuff
Position Lying
Oxygen Delivery(#1):
Oxygen Delivery Method Nasal Cannula
Oxygen Delivery(#2):
Oxygen Delivery Method Room Air
Supplemental O2 None
O2 Sat by Pulse Oximetry 98
SpO2 Episode Spot Check

*06/15/13   1403    General Reassessment*                           *Alyson Stastny, RN*
Subjective Status:

Patient: JONES,LANCE S

```
DATE: 06/16/13 @ 0105        St. John's Springfield EDM LIVE              PAGE 7
USER: APERKTIF                    ED Patient Record
```

```
RPT: EDYNCHT   Location: ED        ED Room:                  Acct No: Y00001107519
Patient: JONES,LANCE S             Age/Sex: 36/M             Unit No: MA01247496
ED Provider: GAINES,SAM, MD        DOB: 07/30/1976           Facility: SJS
```

Patient Complaint or Concerns Denies
Patient Currently Waiting For STRESS TEST RESULTS
Complaint or Evidence of Pain or Distress N
Objective:
Level of Consciousness Alert, Awake, Follows Commands
Orientation Oriented x3
Patient Behavior Appropriate, Calm, Cooperative
Skin Temperature Warm
Skin Color Race Appropriate
Skin Moisture Dry
Respiratory Effort Non-Labored, Without Oxygen
Respiratory Pattern Regular
Ambulation Ability Ambulatory
Gait Steady Gait
Speech Clear, Appropriate
Additional Notes:
Additional Notes PT RESTING ON STRETCHER WITH CORRECTIONAL OFFICER AT BEDSIDE. PT DENIES
             ANY NEEDS OR PAIN AT THIS TIME. PT UPDATED THAT WE ARE JUST WAITING FOR
             STRESS TEST RESULTS. CALLBELL WITHIN REACH. SIDERAILS UP X2. WILL CONTINUE
             TO MONIOR. VSS. NO DISTRESS NOTED.

*06/15/13  1517    Discharge Record*                              *Alyson Stastny, RN*
Discharge:
Discharged To Comment SANGAMON COUNTY JAIL
Discharged Via Ambulation
Accepting Specialty SANGAMON COUNTY
Summary of Care Provided N
Accompanied By Law Enforcement
Belongings at Discharge Law Enforcement
Given to Patient/SO Discharge Instructions
Discharge/Medication Instructions Given To Patient, Law Enforcement
Verbalized Understanding Y
Comment WRITTEN AND VERBAL UNDERSTANDING

---

### Home Medications

| Prescription/Reported Meds | Type | Issued | Provider | Entered |
|---|---|---|---|---|
| Ranitidine Tab (RANITIDINE HCL)  150 MG TAB | Rx | 06/15/13 | GAINSAM | 06/15/13 |
|   150 MG PO TWICE A DAY 10 Days | | | | |
| Acetaminophen/Codeine Tab #3 300-30 Mg (TYLENOL/CODEINE Reported | | | | 04/25/10 |
|   #3)  1 EA TAB | | | | |
|   1 - 2 TABS PO Q4H As needed | | | | |
| Efavirenz/Emtricitab/Tenofovir (Atripla)  1 TAB TABLET  Reported | | | | 06/15/13 |
|   1 TAB PO BEDTIME | | | | |

---

### Prescriptions (this visit)

| Prescription/Reported Meds | Type | Issued | Provider | Entered |
|---|---|---|---|---|
| Ranitidine Tab (RANITIDINE HCL)  150 MG TAB | Rx | 06/15/13 | GAINSAM | 06/15/13 |
|   150 MG PO TWICE A DAY 10 Days | | | | |

---

### MAR Meds

---

Patient: JONES,LANCE S

```
DATE: 06/16/13 @ 0105        St. John's Springfield EDM LIVE              PAGE 8
USER: APERKTIF                      ED Patient Record
```

```
RPT: EDYNCHT   Location  ED           ED Room:              Acct No: Y00001107519
Patient: JONES,LANCE S               Age/Sex: 36/M         Unit No: MA01247496
ED Provider: GAINES,SAM, MD          DOB: 07/30/1976       Facility: SJS
```

## Medication

| | Sch Date-Time | Ordered Dose | Admin Dose | | |
|---|---|---|---|---|---|
| | Doc Date-Time | Given - Reason | | Site | User |

NITROGLYCERIN 0.4 MG SUBL TAB #25 Q5M/PRN/SL

```
                        0.4 MG           0.4 MG
            06/15/13-1020  Y                              Heather N Buchanan
            Blood Pressure Systolic: 144
            Blood Pressure Diastolic: 63
            Pulse Rate: 66
            Cardiac Pain: 3
            Response to Pain Interventions:
              3
```

SODIUM CHLORIDE 0.9% FLUSH 10 ML SYR AS DIRECTED/PRN/IVFLUSH

```
                        10 ML            10 ML
            06/15/13-1352  Y                              Alyson Stastny
                        10 ML            10 ML
            06/15/13-1454  Y                              Alyson Stastny
```

PANTOPRAZOLE 40 MG VIAL ONCE/ONE/IVP

```
            06/15/13-1500  40 MG           40 MG
            06/15/13-1454  Y                              Alyson Stastny
            Infusion Location: R. Antecubital
            Intravenous: Push
```

ALUM/MAG/SIMETH SUSPENSION 30 ML CUP ONCE/ONE/PO

```
            06/15/13-1500  30 ML           30 ML
            06/15/13-1454  Y                              Alyson Stastny
```

### Immunizations

| VACCINE | DATE | G/ N REASON | VAC LOT NUMBER | EXP DATE DOSE | UNTS INJ SITE |
|---|---|---|---|---|---|

### Orders Summary

| Ordered | | Cat | Procedure | Status | Ordering Provider | Signed |
|---|---|---|---|---|---|---|
| 06/15/13 | 1050 | CAR | CV Treadmill Echo | Complete | GAINES,SAM, MD | N/A |
| 06/15/13 | 0953 | CAR | CV EKG 12 Lead In Emergency | Resulted | GAINES,SAM, MD | N/A |
| 06/15/13 | 1111 | CAR | CV EKG 12 Lead In Emergency | Resulted | GAINES,SAM, MD | N/A |
| 06/15/13 | 1236 | CAR | CV Stress Echo Cont Dop Colo | Resulted | GAINES,SAM, MD | N/A |
| 06/15/13 | 0953 | ED | CARDIAC MONITOR | Transmitted | GAINES,SAM, MD | N/A |
| 06/15/13 | 0953 | ED | O2 SAT (ACTIVITY/AT REST) | Transmitted | GAINES,SAM, MD | N/A |
| 06/15/13 | 0953 | ED | OXYGEN | Transmitted | GAINES,SAM, MD | N/A |
| 06/15/13 | 0953 | ED | IV INSERTION | Transmitted | GAINES,SAM, MD | N/A |
| 06/15/13 | 0953 | ED | DRAW BLOOD FOR DIAGNOSTICS | Transmitted | GAINES,SAM, MD | N/A |
| 06/15/13 | 0953 | LAB | CBC W Differential | Complete | GAINES,SAM, MD | N/A |
| 06/15/13 | 0953 | LAB | ED Basic Metabolic Prof | Complete | GAINES,SAM, MD | N/A |
| 06/15/13 | 0953 | LAB | Creatine Kinase (CK) (CPK) | Complete | GAINES,SAM, MD | N/A |
| 06/15/13 | 0953 | LAB | CKMB Profile. | Complete | GAINES,SAM, MD | N/A |
| 06/15/13 | 0953 | LAB | Troponin I | Complete | GAINES,SAM, MD | N/A |
| 06/15/13 | 0953 | LAB | Protime (PT / INR) | Complete | GAINES,SAM, MD | N/A |
| 06/15/13 | 0953 | LAB | Partial Thromboplas Time (PT | Complete | GAINES,SAM, MD | N/A |

Patient: JONES,LANCE S

```
DATE: 06/16/13 @ 0105        St. John's Springfield EDM LIVE                PAGE 9
USER: APERKTIF                    ED Patient Record
```

```
RPT: EDYNCHT    Location: ED         ED Room:              Acct No: Y00001107519
Patient: JONES,LANCE S               Age/Sex: 36/M         Unit No: MA01247496
ED Provider: GAINES,SAM, MD          DOB: 07/30/1976       Facility: SJS
```

| Date | Time | | | Status | Provider | |
|---|---|---|---|---|---|---|
| 06/15/13 | 0953 | LAB | D Dimer Quantitative | Complete | GAINES,SAM, MD | N/A |
| 06/15/13 | 0953 | PHA | NITROSTAT | Complete | GAINES,SAM, MD | N/A |
| 06/15/13 | 0953 | PHA | SALINE FLUSH 10 ML | Complete | GAINES,SAM, MD | N/A |
| 06/15/13 | 1014 | PHA | NITROSTAT | Complete | | N/A |
| 06/15/13 | 1014 | PHA | ASPIRIN CHEWABLE TABLET | Complete | | N/A |
| 06/15/13 | 1230 | PHA | DEFINITY | Complete | | N/A |
| 06/15/13 | 1442 | PHA | PROTONIX | Complete | GAINES,SAM, MD | N/A |
| 06/15/13 | 1442 | PHA | MAG-AL PLUS XS SUSPENSION | Complete | GAINES,SAM, MD | N/A |
| 06/15/13 | 0953 | XRA | XR Chest 1 View Portable | Resulted | GAINES,SAM, MD | N/A |

## Treatments

*06/15/13  0940    IV Access*                                    *Heather N Buchanan, RN*
IV Insertion Line and Site Care: Line Location Modifier Left; IV Site Location Antecubital;
Procedure Initiate Access; Line Type / Description Periph Line; Catheter Size 18 gauge;
IV Patency Blood Return; IV Line/Site Observation No Redness, Non-Tender;
IV Dressing/Splint Clean, Dry, Intact

*06/15/13  0940    Cardiac Monitor*                              *Heather N Buchanan, RN*
Cardiac Monitoring: Episode Type Patient Placed on Monitor; Cardiac Rhythm Sinus Bradycardia;
Ectopy and Rhythm Modifier No Ectopy; Plan of Care: Plan of Care Continue Monitoring

*06/15/13  0940    Oxygen*                                       *Heather N Buchanan, RN*
Oxygen: Initial Oxygen Set-up Yes; Oxygen Delivery Method Nasal Cannula; Oxygen Status
Started; Liters 2

*06/15/13  0940    Oxygen Saturation*                            *Heather N Buchanan, RN*
Oxygen Saturation Assessment: Saturation Assessed While at Rest; SpO2 100; Supplemental O2
2 Liters; Additional Notes: Procedure tolerated well by patient Y

*06/15/13  0944    Exam by Provider*                             *SAM GAINES, PHYS*

*06/15/13  0954    12 Lead EKG done*                             *Nicole L Michel*

*06/15/13  1006    Blood Draw for Labs*                          *Bruce G Skiles*
Blood Draw: Blood Draw Venipuncture Performed

*06/15/13  1059    12 Lead EKG done*                             *Nicole L Michel*

*06/15/13  1113    Transported to Stress Lab*                    *Heather N Buchanan, RN*
Transport Note: Transported Via Stretcher; Accompanied by Law Enforcement; Equipment Oxygen

*06/15/13  1344    Patient Back in ED*                           *Rebecca A Sutton*

*06/15/13  1518    IV Access*                                    *Alyson Stastny, RN*
IV Insertion Line and Site Care: Line Location Modifier Left; IV Site Location Antecubital;
Procedure Discontinue Site; Catheter Size 20 gauge; IV Line/Site Observation No Redness,
Non-Tender, Catheter Intact; IV Dressing/Splint Dry, Gauze; Patient Complaints
Denies Complaints; IV Interventions / Site Care IV Cath Removed Intact, Pressure Dressing;
Procedure Tolerated Well by Patient Y

## PCS Interventions

Patient: JONES,LANCE S

```
DATE: 06/16/13 @ 0105        St. John's Springfield EDM LIVE              PAGE 10
USER: APERKTIF                        ED Patient Record

RPT: EDYNCHT   Location: ED          ED Room:              Acct No: Y00001107519
Patient: JONES,LANCE S               Age/Sex: 36/M         Unit No: MA01247496
ED Provider: GAINES,SAM, MD          DOB: 07/30/1976       Facility: SJS
```

Departure

Primary Impression:
Reflux Esophagitis

Additional Impressions:
Esophageal Spasm
Disposition: 01 HOME, SELF-CARE                Departure Date/Time: 06/15/13 - 1518
Comment:
Condition: IMPROVED AND STABLE

Referrals:
UNKNOWN,PRIMARY CARE PHYS
800 E CARPENTER ST
SPRINGFIELD, IL 62769
Follow-up Plan:
Note:


Pt Instructions: Esophageal Spasm (ED)

Departure Forms: You were treated by:

Additional Instructions:
Follow with your doctor or doctor referral, call for appointment.

If prescribed meds, fill them and take as directed.

return if change or worsen in condition.

take Zantac as prescribed.

no greasy or spicy foods the next 2 days

Report Created: 06/15/13 0945                     Page 1

**ST.JOHN'S HOSPITAL-SPRINGFIELD**
800 E. Carpenter
Springfield, Il

**ED Provider Documentation**

NAME:                   JONES,LANCE S
MR#:                    MA01247496
ACCT#:                  Y00001107519
ROOM#:
ED PROVIDER:            GAINES,SAM, MD
ED ARRIVAL DATE:        06/15/13
BIRTHDATE/AGE/SEX:      07/30/1976 / 36 / M
PCP:                    UNKNOWN,PRIMARY CARE PHYS

## Copies To
**~ (GAINES,SAM, MD)**

## History of Present Illness
**Time Assigned to Provider:** 09:44 (GAINES,SAM, MD)
**Date Seen by Provider:** Jun 15, 2013
**Time Seen by Provider:** 09:46
**Hx/Exam Limitations:** No Limitations
**Source of History:** Patient (GIBSON,AMBER N SCRIBE)
**Chief Complaint:** Chest Pain
**Stated Complaint:** CP
**Current Pain Scale (1-10):** 3 (GAINES,SAM, MD)
**History of Present Illness**
Pt is a 36 y/o male who presents to the ED with CP. The pt states that he became slightly SOB this
morning along with this he c/o CP. Once he was put on oxygen his pain became better. Pt has a hx of
HIV.
**Conditions Present on Arrival:** No Conditions Present
**Onset:** Just Prior to Arrival
**Frequency/Duration:** Intermittent
**Intensity:** Mild
**Current Pain Scale (1-10):** 2
**Actvities at Onset:** None
**Aggravating Factors:** None Identified
**Alleviating Factors:** None Identified (GIBSON,AMBER N SCRIBE)

Report#: 0615-0044
NAME: JONES,LANCE S   ACCT#: Y00001107519   MR#: MA01247496

## Allergies/Meds
**Allergies:**
**Coded Allergies:**
   No Known Allergies (Unverified , 6/15/13)
**Reported Meds**
**Active Scripts**
Ranitidine Tab (Ranitidine Hcl) 150 Mg Tab 150 Mg PO BID  10 Days
      Prov:GAINES,SAM, MD                                      6/15/13


**Reported Medications**
Efavirenz/Emtricitab/Tenofovir (Atripla) 1 Tab Tablet 1 Tab PO BEDTIME
      6/15/13


Acetaminophen/Codeine Tab #3 300-30 Mg (Tylenol/Codeine #3) 1 Ea Tab 1 - 2 Tabs PO Q4H PRN
      AS NEEDED FOR PAIN
      4/25/10


## Past Medical History
**History of Immune Problems:**  Yes
**Immune History:**  HIV (GIBSON,AMBER N SCRIBE)


## Past Surgical History
**Surgical History:**  No (GIBSON,AMBER N SCRIBE)


## Family/Social History
**Current Signs/Sx of Abuse:**  No (GIBSON,AMBER N SCRIBE)


## Review of Systems
**Review of Systems Completed:**  Yes
**General:**  Reports: No Symptoms
**Skin:**  Reports: No Symptoms
**Head:**  Reports: No Symptoms
**Eyes:**  Reports: No Symptoms
**Ears:**  Reports: No Symptoms
**Nose/Sinuses:**  Reports: No Symptoms
**Mouth and Throat:**  Reports: No Symptoms
**Neck:**  Reports: No Symptoms
**Breasts:**  Reports: No Symptoms
**Respiratory:**  Reports: Shortness of Breath
**Cardiac:**  Reports: Chest Pain
**Gastrointestinal:**  Reports: No Symptoms

**Urinary:** Reports: No Symptoms
**Genito-Reproductive Male:** Reports: No Symptoms
**Musculoskeletal:** Reports: No Symptoms
**Peripheral Vascular:** Reports: No Symptoms
**Neurologic:** Reports: No Symptoms
**Mental Status:** Reports: No Symptoms
**Endocrine:** Reports: No Symptoms
**Hematologic/Lymphatic:** Reports: No Symptoms (GIBSON,AMBER N SCRIBE)

## Physical Exam
**Vital Signs**

Vital Signs

| Date Time | Temp | Pulse | Resp | B/P | Pulse Ox | O2 Delivery | O2 Flow Rate | FiO2 |
|-----------|------|-------|------|--------|----------|---------------|--------------|------|
| 6/15/13 13:54 | | 75 | 18 | 138/77 | 98 | Room Air | | |
| 6/15/13 11:10 | | 65 | 16 | 126/68 | 100 | Nasal Cannula | | |
| 6/15/13 10:32 | | 61 | 16 | 132/66 | 98 | Nasal Cannula | | |
| 6/15/13 10:20 | | 66 | | 144/63 | | | | |
| 6/15/13 09:43 | 36.60 | 73 | 19 | 143/95 | 100 | Nasal Cannula | | |
| 6/15/13 09:40 | | | | | 100 | | | |
| 6/15/13 09:40 | | | | | | Nasal Cannula | 2 | |

**(GIBSON,AMBER N SCRIBE)**
**Temperature Source:** Oral
**Supplemental O2:** 2 Liters
**O2 Sat (%):** 100 (GAINES,SAM, MD)
**Vital Signs Interpretation:** Stable Except B/P (GIBSON,AMBER N SCRIBE)
**Physical Exam Completed:** Yes
**General Appearance:** Well Developed, Well Nourished
**Skin:** Normal Color, Warm/Dry
**Head:** Normocephalic
**Eyes:** PERRL/EOMI, Conjunctiva Clear
**ENT:** Oropharynx Normal, Ears Normal, Nose Normal
**Neck:** Non-Tender, Supple
**Back:** Non Tender
**Chest and Respiratory:** Airway Patent, No Respiratory Distress, Lungs Clear-Auscultation, Breath Sounds Equal, No Accessory Muscle Use
**Heart:** Regular Rate/Rhythm, No Murmur
**Abdominal:** Normal Bowel Sounds, Non-Tender, Soft
**Vascular:** Normal Capillary Refill, Normal Peripheral Pulses
**Musculoskeletal:** Normal Range of Motion

Neurologic: Alert and Oriented x 3, CNs Normal as Tested, No Gross Motor Deficits
**Mood or Affect:** Normal Affect
**Genital-Rectal Male:** Deferred **(GIBSON,AMBER N SCRIBE)**

## Data
**Administered Medications**

**Administered Medications**

| Medications (Trade) | Dose Ordered | Sig/Sch Route | Start Time Stop Time | Status | Last Admin Dose Admin |
|---|---|---|---|---|---|
| Nitroglycerin (Nitrostat) | 0.4 mg | Q5M  PRN SL | 6/15/13 10:00 6/15/13 10:11 | DC | 6/15/13 10:20 |
| Sodium Chloride (Saline Flush 10 ml) | 10 ml | AS DIRECTED  PRN IVFLUSH IV CATHETER FLUSH | 6/15/13 10:00 | | 6/15/13 14:54 |
| Nitroglycerin (Nitrostat) | 0.4 mg | STK-MED ONCE SL | 6/15/13 10:19 6/15/13 10:20 | DC | |
| Aspirin (Aspirin Chewable Tablet) | 81 mg | STK-MED ONCE PO | 6/15/13 10:19 6/15/13 10:20 | DC | |
| Perflutren Lipid Microsphere (Definity) | 2.2 mg | STK-MED ONCE IV | 6/15/13 12:36 6/15/13 12:37 | DC | |
| Pantoprazole (Protonix) | 40 mg | ONCE  ONCE IVP | 6/15/13 15:00 6/15/13 15:01 | DC | 6/15/13 14:54 |
| Al Hydrox/Mg Hydrox/Simethicone (Mag-Al Plus Xs Suspension) | 30 ml | ONCE  ONCE PO | 6/15/13 15:00 6/15/13 15:01 | DC | 6/15/13 14:54 |

**(GIBSON,AMBER N SCRIBE)**
**CBC/BMP**
**6/15/13 09:59**





**(GIBSON,AMBER N SCRIBE)**
**Lab Interpretation**

Report Created: 06/15/13 0945                Page 5

Lab Results

| Test | 6/15/13 09:59 |
|---|---|
| White Blood Count | 7.45 K/cumm (4.50-10.80) |
| Red Blood Count | 4.59 M/cumm (4.50-6.10) |
| Hemoglobin | 14.2 gm/dL (13.0-18.0) |
| Hematocrit | 42.0 % (37.0-52.0) |
| Mean Corpuscular Volume | 91.5 fL (78.0-100.0) |
| Mean Corpuscular Hemoglobin | 30.9 pg (27.0-31.0) |
| Mean Corpuscular Hemoglobin Concent | 33.8 gm/dL (33.0-36.0) |
| Red Cell Distribution Width | 12.8 % (11.5-14.5) |
| Platelet Count | 177 K/cumm (150-350) |
| Mean Platelet Volume | 10.6 fL (7.4-10.4) |
| Total Absolute Neutrophils | 4.71 K/cumm (1.60-8.30) |
| Absolute Lymphocytes (CBC) | 2.12 K/cumm (0.80-4.70) |
| Absolute Monocytes (CBC) | 0.45 K/cumm (0.00-1.50) |
| Absolute Eosinophils (CBC) | 0.15 K/cumm (0.00-0.40) |
| Absolute Basophils (CBC) | 0.02 K/cumm (0.00-0.20) |
| Prothrombin Time | 13.0 sec (11.6-14.3) |
| Prothromb Time International Ratio | 1.0 (0.9-1.1) |
| Activated Partial Thromboplast Time | 27 sec (22-35) |
| D-Dimer | 0.2 ug/mL FEU (<0.5) |

Report#: 0615-0044
NAME: JONES,LANCE S   ACCT#: Y00001107519   MR#: MA01247496

Report Created: 06/15/13 09:45                    Page 6

| | |
|---|---|
| Sodium Level | 141 mmol/L (135-147) |
| Potassium Level | 3.4 mmol/L (3.5-5.0) |
| Chloride Level | 110 mmol/L (98-107) |
| Carbon Dioxide Level | 19 mmol/L (22-29) |
| Anion Gap | 12 (()) |
| Blood Urea Nitrogen | 13 mg/dL (8.9-20.6) |
| Creatinine | 0.8 mg/dL (0.7-1.3) |
| Glucose Level | 141 mg/dL (70-109) |
| Calculated Osmolality | 284 mOsm/kg (()) |
| Calcium Level | 9.3 mg/dL (8.4-10.2) |
| Total Creatine Kinase | 424 U/L (30-200) |
| Creatine Kinase MB | 1.7 ng/mL (0.0-7.2) |
| Creatine Kinase MB Relative Index | 0.4 (()) |
| Troponin I | < 0.010 ng/mL (0.000-0.028) |

**(GIBSON,AMBER N SCRIBE)**

## Disposition
**PMH/Record Reviewed:** Unavailable
**Critical Care Total Time (min):** Yes (30 )
**Narrative Course**
patient also was given protonix IV and Maalox with significant relief **(GAINES,SAM, MD)**
**Narrative Course**
Pt is a 36 y.o male who presents to the ED from the local jail with CP. Pt denies having a hx of CAD and has no significant problems except for GI problems. Initial Troponin and EKG were negative. His stress test and ECG were negative. After reexamining the pt, his pain was found to be epigastric abd pain. Pt is thought to have reflux esophagitis. He will be sent back to jail on Zantac to follow up with a physician.
**(GIBSON,AMBER N SCRIBE)**

Report#: 0615-0044
NAME: JONES,LANCE S    ACCT#: Y0000l107519    MR#: MA01247496

**Patient Endorsed to:** Primary Provider **(GAINES,SAM, MD)**
**Disposition:** 01 HOME, SELF-CARE
**Risks/Benefits/Alternatives:** discussed with patient, All questions answered **(GAINES,SAM, MD)**
**DIAGNOSIS/IMPRESSION:**
    **Primary Impression:** Reflux Esophagitis
    **Additional Impression:** Esophageal Spasm
**Condition:** IMPROVED AND STABLE
**Patient Instructions:** Esophageal Spasm (ED)

**Additional Instructions:**
Follow with your doctor or doctor referral, call for appointment.
If prescribed meds, fill them and take as directed.
return if change or worsen in condition.
take Zantac as prescribed.
no greasy or spicy foods the next 2 days
**Referrals:**
UNKNOWN,PRIMARY CARE PHYS (PCP)
3 Days
**Scripts**
Ranitidine Tab (Ranitidine Hcl)150 Mg Tab 150 Mg PO BID  10 Days
    Prov:GAINES,SAM, MD                                                    6/15/13
**Attending Attestation**
This documentation has been entered in the presence of Gaines,Sam,MD
Sam Gaines
  **(GAINES,SAM, MD)**
**Attending Attestation**
Time:0946
Medical Scribe:Amber Gibson, scribing for Dr. Sam Gaines. **(GIBSON,AMBER N SCRIBE)**

GAINES,SAM, MD                                    Jun 15, 2013 09:45
GIBSON,AMBER N SCRIBE                       Jun 15, 2013 09:57

<Electronically signed by SAM GAINES MD> 06/17/13 2156
<Electronically signed by AMBER N GIBSON SCRIBE> 06/15/13 1507

Report#: 0615-0044
NAME: JONES,LANCE S   ACCT#: Y00001107519   MR#: MA01247496

CENT.ILL EMER PHYS LLP
ST. JOHNS HOSPITAL
75 REMITT. DR #1374
CHICAGO IL 60675 1374

| PHONE |
| --- |
| 800 210 7034 |

LANCE S JONES
1 SHERIFFS PLAZA
SPRINGFIELD IL 62703

115001

2474543

06/15/13

| DATE |
| --- |
| 10/02/14 |

2474543

| ACCOUNT NUMBER |

PLEASE RETURN THIS PORTION WITH YOUR PAYMENT OF $ _____

***PATIENT NAME -   LANCE JONES                    2474543

| 06 | 15 | 13 | GAINES | EMERGENCY DEPT VISIT | | | 99285 | 679.00 |
| | | | | | Dx1  53011 | Dx2  5305 | | |
| 09 | 17 | 13 | GAINES | CONTRACTED INSURANCE PMT-S | | | 40 | -69.25 |
| 09 | 17 | 13 | GAINES | CONTRACTUAL ADJUSTMENT-SAN | | | 40 | -609.75 |
| | | | | ACCOUNT BALANCE | | | | 0.00 |

Our records indicate that you have a balance for
emergency physician services performed at St. John's Hospital.
To make a payment or insurance update online,
please visit https://patient.symmetricrs.com.

| 2474543 | | -679.00 | 679.00 | 0.00 |
| --- | --- | --- | --- | --- |
| 10/02/14 | MAKE CHECK PAYABLE TO:   CENT.ILL EMER PHYS LLP | | | |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

TAX ID 38-3380443                          MARSHAH