IN THE UNITED STATES DISCTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ABIGAIL QUINN , as Special Administrator of the Estate of LANCE JONES, deceased | ) ) ) ) ) ) | Civil Action No. 1:14-cv 3260<br><br>Honorable Judge Colin S. Bruce |
| Plaintiff , | ) ) | |
| vs. | ) ) | |
| NEIL WILLIAMSIN, SHERIFF OF SANGAMON COUNTY, ILLINOIS and UNKNOWN NURSE, DR. SAM GAINES UNKNOWN, PRISON   GUARD 1, PRISON GUARD 2. PRISON GUARD 3, | ) ) ) ) ) ) | |
| Defendants | ) | |

**PLAINITFF'S RESPONSE TO DEFEDANT SAM GAINES, M.D.'s MOTION FOR SUMMARY JUDGEMENT**

**NOW COMES**, the Plaintiff, ABIGAIL QUINN, as Special Administrator of the Estate of LANCE JONES, deceased, by their attorney JAMES MURPHY-AGUILU and TIM FISCELLA, and pursuant to Fed. R. Civ. P 56, requests that this Honorable Court to deny Dr. Gaines' Motion for Summary Judgment. In response to Defendant's motion, Plaintiff states as follow:

**A.INTRODUCTION**

On June 15, 2013, the plaintiff's decedent, Lance Jones, was an inmate at the Sangamon County Jail. He was transported to the St. John's Hospital's Emergency Department with complaints of shortness of breath, chest and left arm pain. Defendant Dr. Gaines assessed Jones, ordered a series of tests, initiated treatments and discharged Jones from the emergency department. Jones returned to the Sangamon County Jail and

1

subsequently died, according to the autopsy report, from coronary atherosclerosis otherwise known as coronary artery disease ten day later on June 25, 2013.

On September 14, 2014, plaintiff, as Special Administrator of the Estate of Lance Jones, filed a complaint against Dr. Gaines and other Defendants. In part, plaintiff alleges that Dr. Gaines, as the treating emergency room physician ten days prior to the plaintiff's death, is liable under 42 U.S.C. 1983 for acting under the color of the state law and deliberately depriving plaintiff decedent of his constitutionally protected rights under the fourteenth Amendment.

On October 24, 2014, Defendant Dr. Gaines filed a Motion to Dismiss Plaintiff's Complaint. On November 19, 2014, this Court denied defendant's motion to dismiss Count II stating there were enough facts in the Complaint "to allege a claim to relief that is plausible" to support a 42 U.S.C. 1983 claim of deliberate indifference to a serious medical need.

On April 30, 2015 Defendant Dr. Gaines filed a motion for summary judgment arguing that based upon facts secured in discovery, Dr. Gaines is entitled to summary judgment as a matter of law. However, Defendant Dr. Gaines relies solely on conclusions he makes in his affidavit to justify summary judgment in his favor. Plaintiff has not yet deposed Defendant Dr. Gaines. Without further discovery it can hardly be argued that the opinions Dr. Gaines concludes in his affidavit are undisputed.

In fact, the heart of the issue is whether Defendant Dr. Gaines' conduct or lack of conduct amounted to deliberate indifference of a serious medical need. It is the plaintiff's position that at the very least, short of depositions where Dr. Gaines testimony is subject to cross-examination, this motion is premature under federal rule 56(d). Alternatively, Dr.

Gaines conclusions that his conduct was reasonable does not sufficiently put the issue to rest. Therefore, even based on the limited evidence material issues of fact exist that a reasonable trier of fact could consider Dr. Gaines action or inaction constitutes deliberate indifference to a serious medical need. Therefore, this Court should deny or defer ruling on the motion.

## B. RESPONSE TO UNDISPUTED MATERIAL FACTS

### I. UNDISPUTED MATERIAL FACTS

2. In Count II, Plaintiff Alleges that Dr. Gaines was an emergency room doctor from St. John's Hospital. (Exhibit 1, Para.7.) Plaintiff alleges that plaintiff's decedent was arrested and processed into the Sangamon County Jail in 2013. (Exhibit 1 , Para. 11 .) Plaintiff's decent was allegedly transferred from the Sangamon County Jail dispensary to St. John's Hospital's Emergency Department on June 15, 2013 after having experienced shortness of breath and chest pains. (Exhibit 1 , Para. 12.)

3. While in the emergency Department, Plaintiff alleges that "medical personnel there verified the serious medical needs of plaintiff's decedent and provided him with medications consistent with a heart attack". (Exhibit 1 , Para. 15) Plaintiff's decedent was not kept overnight for observation; he was returned to the Sangamon County Jail "within a few hours." (Exhibit 1 , Para 16) According to the allegations in the Complaint, Dr. Gaines concluded that plaintiff's decedent was suffering from "heart burn." (Exhibit 1, Para 17) Over the proceeding days, plaintiff alleges that plaintiff's decedent complained of serious discomfort to officers, nurses and fellow inmates of chest pain. (Exhibit 1, Para 19.)

3

4.      Plaintiff further alleges that Dr. Gaines "was a physician on-call at St. John's Hospital who provided certain medical care for the Sangamon County Jail on June 20, 2013." (Exhibit 1, Para 31.) By virtue of Dr. Gaines alleged position, plaintiff claims, "all of Dr. Gaines' actions or omissions were performed under the color of State law." (Exhibit 1, Para 32.)

5.      Plaintiff further alleges that Dr. Gaines was " deliberately indifferent" to securing plaintiff's decedent's right to adequate medical care protected under the Fourteenth Amendment and that Dr. Gaines committed one or more of the following acts or omissions: Failed to frequently monitor plaintiff's decedent from June 15-25, 2013; failed to call in a cardiologist to evaluate plaintiff's decedent; failed to observe plaintiff's decedent for a reasonable period of time; failed to order sufficient test to rule out a heart attack; refused to admit plaintiff's decedent; failed to advise the Sangamon County nursing staff to check plaintiff's decedent's vital; and, refused to treat plaintiff's decedent. (Exhibit 1, Para. 36(a)(f).)

7.      Although Dr. Gaines agreed that plaintiff's decedent died on June 25, 2013, Dr. Gaines only treated plaintiff's decedent on June 15, 2013, not June 20, 2013 as alleged in plaintiff's complaint. (Exhibit 2, Paras.3, 12.) Dr. Gaines further admitted that he performed test and studies on plaintiff's decedent on June 15, 2015 and subsequently discharged him over five hours later with a prescription for antacids and follow-up instructions to see his primary care physician. (Exhibit 2, Paras.12, 15-16.)

11.     Dr. Gaines also produced what medical records he has from the St. John's Emergency Department in connection to his care and treatment of plaintiff's decedent on June 15, 2013. (See Exhibit 3, Attachment C.) The medical records

document the care and treatment Dr. Gaines rendered to plaintiff's decedent on June 15, 2013 and the fact that the plaintiff's decedent was treated in the Emergency Department for five hours. (Exhibit 3, attachment C.) The medical records also show that plaintiff's decedent was placed on a cardiac monitor, he received an RKG, chest x-rays, various lab studies, a D-Dimer, cardiac enzymes, and a stress test. (Id.)

13. Dr. Gaines saw, treated and evaluated plaintiff's decedent in the Emergency Department at St. John's Hospital on June 15, 2013. (Exhibit 4, Para. 9.) Mr. Jones arrived via ambulance at 9:40 a.m and had complaints of chest pain, shortness of breath and nausea. (Exhibit 4, Para.10.) He was previously medicated in route with aspirin, nitroglycerin and oxygen. (Id) His current pain complaint was 3 out of 10. (Id)

14. Dr. Gaines performed a history and physical on Mr. Jones. (Exhibit 4, Paras.11-12.) The patient remained on oxygen via nasal cannula. (Id. at Para. 13.) Dr. Gaines ordered a series of test, including an EKG, cardiac enzymes, cardiac monitor, a stress test, a complete blood culture, a basic metabolic panel, a D-Dimer and chest x-rays.(Id.)

15. Dr. Gaines re-examined the patient and concluded that Mr. Jones had reflux esophagitis or possible esophageal spasm. (Exhibit 4, Para. 15.) Plaintiff's decedent was discharged with Zantac and ordered to follow-up with a physician in three days. (Id.)

18. In addition to Dr. Gaines' Declaration, Dr. Derek King, the general partner of CIEP, also signed a Declaration, a copy of which I attached hereto as Exhibit 5. According to Dr. King, CIEP had no contract to treat patients at the Sangamon County

5

Jail. (See Exhibit 5, Para. 5.) CIEP only had a contract with St. John's Hospital to staff St. John's Emergency Department with emergency physicians. (Exhibit 5, Para.6.)

## II. DISPUTED MATERIAL FACTS

8.  Dr. Gaines denied all the other material allegations of negligence and further denied any claim that his conduct was in any way "deliberately indifferent" (Exhibit 2, Paras.36, 41-42.)

13. His EKG showed a normal sinus rhythm. (Id.)

15. The patient's cardiac work-up was normal. (Exhibit 4, Para. 14.) His condition improved. (Id.) Dr. Gaines opined that complied with the standard of care at all times. (Exhibit 4, Para.16.)

## III. DISPUTED IMMATERIAL FACTS

None

## IV. UNDISPUTED IMMATERIAL FACTS

1.  On September 14, 2013, plaintiff, Abigail Quinn, as special Administrator of the Estate of Lance Jones, filed a three count complaint against Dr. Gaines and other defendants in connection to medical care that was rendered to plaintiff's decedent in June 2013. (See, plaintiff's Complaint at Law, a copy of which is attached hereto as Exhibit 1.) Counts II and III of plaintiff' s Complaint at Law are directed at Dr. Gaines. (See, Exhibit 1.)

6.  On November 4, 2014, Dr. Gaines filed his Answer to plaintiff's Complaint. (A copy of Dr. Gaines' Answer is attached hereto as Exhibit 2.) In his

6

Answer, Dr. Gaines denied that he was a state actor or that he was acting under the color of the state law so as to be liable under 42 U.S.C § 1983. (Exhibit 2, Para 1.) Dr. Gaines also answered that he was not " on-call" to the Sangamon County Jail nor did he have a contract or agreement with the Sangamon County Jail to do so. (Id.)

8.  Dr. Gaines denied having any relationship with the Sangamon Country County Jail and stated that he never saw plaintiff's decedent after June 15, 2013. (Exhibit 2, Para. 36.)

9.  On December 22, 2014, Dr. Gaines filed his 26(a) Disclosure. ( A copy of the 26(a) Disclosure is attached hereto as Exhibit 3.) Attached to the Disclosure is a copy of the physician partnership Agreement between CIEP and Dr. Gaines. ( See Exhibit 3, attachment A.) The agreement memorializes the limited partnership agreement between CIEP and Dr. Gaines to staff emergency departments with contractual agreements with CIEP. (id)

10.  In addition, Dr. Gaines also produced a copy of the Agreement for Emergency Department Management Services between CIEP and St. John's Hospital and Amendments. (See Exhibit 3, attachment B.) The Agreement and Amendments memorialize that Dr. Gaines staffed the St. John's Hospital's Emergency Department pursuant to CIEP's agreement with the Hospital. (Id.)

12.  In addition to the contracts attached to Dr. Gaines' 26(A) Disclosure, Dr. Gaines also signed a Declaration, a copy of which is attached hereto as Exhibit 4. In Dr. Gaines' Declaration, Dr. Gaines states that he is a Board Certified Internist and Emergency Physician. (Exhibit 4, Para. 2.) He has practiced medicine for over thirty (30) years. (Exhibit 4, Para.4.) In June 2013, Dr. Gaines was a limited partner with CIEP. (Id.

7

at Para. 5.)  Dr. Gaines worked in the Emergency Department of St. John's hospital through CIEP. ( Exhibit 4, Para.8.)

16. Dr. Gaines never treated a patient at the Sangamon County Jail. (Exhibit 4, Para.17.) Dr. Gaines has no contractual agreement to treat patients at the Sangamon County Jail. (Exhibit 4, Para.18.) Dr. Gaines has never been "on-call" at or for the Sangamon County Jail. (Exhibit 4, Para.19.) Dr. Gaines had no further contact with Mr. Jones after June 15, 2013. (Id.) at Para.20.) Dr. Gaines only encountered plaintiff's decedent because plaintiff's decedent presented to the St. John's Hospital's Emergency Department. (Id. at Para. 21.)

17. Dr. Gaines treats all patients who present to the St. John's Emergency Department regardless of whom they are or their ability to pay for services. (Exhibit 4,Para. 22.)

19. Finally, Co-defense counsel for Mr. Neil Williamson, the sheriff of Sangamon County, produced an agreement for medical care to Sangamon County Jail inmates between the County of Sangamon and Advanced Correctional Healthcare. (A copy of the Agreement for the Provision of Inmate Health Services at the Sangamon County Jail, Sangamon County, Illinois is attached hereto as Exhibit 6.)

20. The terms and conditions in the Inmate Health Service Agreement establishes that Advanced Correctional Healthcare personnel, including physicians, LPN's, nurse practitioners and nurses shall visit the Jail, treat inmates and be available "on an n-call basis seven (7) days per week, twenty four (24) hours per day" with the Sangamon County Jail. (See Exhibit 4, Para. 1.0- Duties and Obligations of ACH.)

V. ADDITIONAL FACTS

1.    Sangamon County Sherriff's' policy dictates that the Jail shall maintain contracts or agreements with outside local hospitals for care of inmates where such care cannot be performed at the Jail facilities. (Plaintiff's Exhibit 2, Sangamon Policies and Procedures Chapter 12: Medical and Health Services, pg. 2)

2.    Sangamon County Sherriff's policy further dictates "all emergency transfers will be made by an ambulance to the emergency room of a contracted hospital". (Plaintiff's Exhibit 2, Sangamon Policies and Procedures Chapter 12: Medical and Health Services, pg. 3).

3.    Decedent Lance Jones June 15, 2013 charts show that medical staff was aware he was an inmate at Sangamon County. Medical staff was further noted that the Local Correctional Facility was his insurer. (Plaintiff's Exhibit 3, St. Johns Emergency Department Patient Records for Lance Jones from June 15, 2013)

4.    Jones was discharged with an order to follow up with his primary care physician within three days. Medical staff could not identify a primary care doctor for Lance Jones. (Plaintiff's Exhibit 3, St. Johns Emergency Department Patient Records for Lance Jones from June 15, 2013)

### III. ARGUMENT

Defendant Dr. Gaines argues that, despite limited discovery, summary judgment is proper. First, he asserts that he cannot be found to have been acting under the color of law where he was not specifically hired by Sangamon County Jail nor provided Plaintiff medical services in Sangamon County Jail. Second, Dr. Gaines asserts that his conduct

was at all times reasonable and therefore he cannot be said to have been deliberately indifferent.

However, according to Federal Rule of Civil Procedure 56, summary judgment is not proper where there exist disputed issues of material facts or under subsection (d) where the nonmovant cannot present facts in opposition where additional discovery should be taken. (FRCP 56(d)). In the instant case, discovery related to the relationship between the health provider and the jail has not yet been fully examined. Furthermore, the discovery we do have suggests that a contractual relationship to provide care to inmates may exist between St. John's Hospital and Sangamon County Jail. There is no question that Dr. Gaines' partnership CIEP was contracted to staff physicians at St. John's Hospital Emergency Department. Therefore, Dr. Gaines would have had an explicit contract to provide medical services at an emergency department that had an agreement to service inmates and thus should be found to have acted under the color of law when he treated decedent Lance Jones.

Additionally, Dr. Gaines argues that there are no disputed issues of material fact regarding his treatment of Lance Jones. To support his argument he cites his own affidavit and the opinions contained within. However, Dr. Gaines has not yet been subject to cross-examination with respect to his findings, nor has discovery closed. His self-serving conclusory statements that his conduct was neither unreasonable nor deliberate indifference is not sufficient to warrant summary judgment at this stage.   The propriety of the care provided by Dr. Gaines' is certainly contested by Plaintiff.  Whether Dr. Gaines' treatment of the decedent rose to the level of deliberate indifference is a factual issue.

What is known without question at this time is that decedent Lance Jones presented with conditions consistent with heart failure was treated for only several hours, not kept overnight, and provided only antacid medication for heart burn days before he died. Moreover, according to the agreed discovery schedule in this case discovery has not closed and expert discovery has not begun. Therefore, at the very least summary judgment should be stayed until further discovery is conducted.

Motion for Continuance under 56(d)

To begin, a motion for a continuance under Rule 56(d) is broadly favored and should be liberally granted. The party seeking additional discovery bears the burden of showing that the evidence sought to be discovered exists. *Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir. Cal. 1991) Denial of a Rule 56(f) application is only proper where it is clear that the evidence sought is almost certainly nonexistent or is the object of pure speculation. *Id.*

In the case at bar, Defendant argues that Dr. Gaines cannot be found to have acted under the color of law and even had he acted under the color of law his conduct could not be said to have violated the Plaintiff's constitutional rights. However, ruling on these two issues at this point in the litigation is not proper without additional discovery.

First, whether Dr. Gaines was acting under the color of law is a legal conclusion that requires an understanding of the contractual relationship between the health provider and the inmate. As argued below, some evidence exists to suggest that St. Johns Hospital and Sangamon County Jail had an ongoing relationship where St. Johns emergency department treated patients that could not be treated within the jail. The existence or

11

nonexistence of this relationship is pivotal to the question of color of law. Additional written discovery to potential new parties and existing parties is necessary.

Moreover, in written discovery to Sangamon County and Defendant Williamson, Plaintiff requested all contracts between St. John's and Sangamon County Jail. (Plaintiff's Exhibit 1 Request to Produce to Sangamon County #1). In response, Sangamon County Jail presented the contract of ACH or Advanced Correctional Healthcare. While this contract establishes the existence of a separate entity charge with facilitating medical services for inmates at Sangamon County, this response does not clarify the issue of fact whether through an explicit contract or implicitly there was an arraignment between St. Johns and ACH or Sangamon County Jail.

Finally, Defendant Dr. Gaines argues that his conduct complied with a reasonable standard of care and therefore the Plaintiff could not meet a higher burden of deliberate indifference. However, again Plaintiff was just presented with Dr. Gaines' affidavit and has not had the opportunity to depose Dr. Gaines nor have an expert oppose his conclusions. For those reasons, this Court should consider granting Plaintiff time to amend the complaint, take depositions of defendants, and propound additional discovery.

<u>Color of Law</u>

When a plaintiff brings a section 1983 claim against a defendant who is not a government official or employee, the plaintiff must show that the private entity acted under the color of state law. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 822-823 (7th Cir. Wis. 2009). Both the Supreme Court and the lower federal courts have

acknowledged the difficulty of determining whether a private entity has acted under the color of state law. *Id*.

The Supreme Court in *West* provides some guidance. In *West*, the Court held when a physician is employed by the state to provide medical services to state prison inmates, that physician acts under the color of state law for purposes of section 1983. *West v. Atkins*, 487 U.S. 42, (1988). The physician's conduct in providing medical services, said the Court, "is fairly attributable to the State." *Id*. at 54. And, because the state controls the medical care of inmates to the exclusion of all other sources, the state has a constitutional obligation under the Eighth Amendment to provide adequate medical care. *Id*. at 55.

When a private health provider enters into a contractual relationship with the state penal institution to provide specific medical services to inmates, it is undertaking freely, and for consideration, responsibility for a specific portion of the state's overall obligation to provide medical care for incarcerated persons. *Rodriguez v. Plymouth Ambulance Serv.,* 577 F.3d at 827. In such a circumstance, the provider has assumed freely the same liability as the state.

Defendant Dr. Gaines relies on his status as an emergency room physician to argue he was not acting under the color of law. He cites Rodriguez, arguing "an emergency medical system that has a preexisting obligation to serve all persons who present themselves for emergency treatment hardly can be said to have entered into a specific voluntary undertaking to assume the state's special responsibility to incarcerated persons." *Rodriguez v. Plymouth Ambulance Serv.,* 577 F.3d 816, 827 (7th Cir. 2009).

However, where a private health care entity agrees to provide medical care to inmates that entity does in fact assume liability from the State. *Id.* Section III of the Sangamon County Sherriff's policy Chapter 12 article 12-002 dictates that the Sangamon County Jail, "will maintain contracts or agreements with outside local hospital(s)….to provide services for those inmates whose health care needs cannot be provided within this facility." (Plaintiff's Exhibit 2 Pg. 2) Additionally, under section IV (B) Emergency Medical Transfers, the policy states "all emergency transfers will be made by an ambulance to the emergency room of a contracted hospital". (Id at 3)

In the instant case, Plaintiff decedent was taken to St. John's hospital at the direction of the Sangamon County Jail. Further, he was escorted by jail officials. (Plaintiff's Exhibit 3 Pg. 6). Assuming Sangamon County Jail followed its own policy, St. John's Hospital and specifically the Emergency Department may likely have a contract or agreement to service inmates. More convincingly, in at least two prior lawsuits filed in this Court alleging similar conduct against the jail, the plaintiffs in those cases were also taken from Sangamon County Jail to St. John's emergency room. (See *Burris v. Cunningham et al.* 09-cv-3116 and *Carlock v. Sangamon County et al*. 08-cv-3075). It is evident, therefore, that there is an established and consistent relationship between the jail and the medical personnel who provide care at that facility.

Additionally, Dr. Gaines, through his partnership contracted with St. Johns hospital to staff physicians at St. Johns Emergency Department. (Defendant's Motion for Summary Judgment Para. 18, Exhibit Para. 6). As stated in *Rodriguez*, when a person accepts employment with a private entity that contracts with the state, he understands that he is accepting the responsibility to perform his duties in conformity with the

14

Constitution. *Rodriguez v. Plymouth Ambulance Serv.,* 577 F.3d at 827. While Dr. Gaines was not an employee of St. Johns, his partnership contracted to provide emergency room physicians with a hospital that likely had an agreement with the jail, therefore under the same analysis CIEP would have a responsibility to assist in that state function.

For the foregoing reasons, this Court should deny Dr. Gaines motion for summary judgment or at the very least grant Plaintiff's request for relief under Fed. R. Civ. P. 56(d).

Deliberate Indifference

Prison officials, or those acting under the color of law, violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104, 50 L. Ed. 2d 251, 97 S. Ct. 285. Deliberate indifference contains both an objective element and a subjective element. *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). In the medical care context, the objective element requires that the inmate's medical need be sufficiently serious. *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996) ("for liability to exist the medical need must be objectively serious"). The subjective element requires that the official knows of and disregards an excessive risk to inmate health or safety.

On June 15, 2013 Plaintiff decedent Lance Jones presented to the St. John's Emergency Department with complaints of chest pain, shortness of breath and left arm pain. (Plaintiff's Exhibit 3 pg 1). Plaintiff decedent reported to the responding medic that his pain level was at a level of 10 out of 10. (Plaintiff's Exhibit 3, pg 2). By the time Dr.

Gaines first treated Lance Jones on June 15, 2013, Jones had been administered medication including oxygen and nitroglycerin. (Plaintiff's Exhibit 3 pg 2). Jones was known to be an HIV patient. (Plaintiff's Exhibit 3, pg 3). As opposed to admitting Plaintiff to the hospital for observation, Dr. Gaines discharged Lance Jones to the Sangamon County Jail the same night with a diagnosis of heartburn, a prescription for antacids and instructions to follow up with his primary care physician. (Plaintiff's Exhibit 3, pg 10). Ten days later on June 25, 2013, Plaintiff decedent Lance Jones died of a heart attack. (Plaintiff's Exhibit 4, Certificate of Death). These two incidents are neither remote nor independent.

For liability to exist the medical need must be objectively serious. *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. Ind. 2008). A delay in the provision of medical treatment for painful conditions--even non-life-threatening conditions--can support a deliberate-indifference so long as the medical condition is "'sufficiently serious or painful." *Id* at 779. The objective element is clearly satisfied in the instant case as ten days after Plaintiff decedent presented to the ER with symptoms of a heart attack, he then died of a heart attack.

With respect to the subjective element, although the existence of a duty must be determined as a matter of law, the question of whether there was a breach of that duty and an injury proximately caused by that breach are questions of fact for the jury. *Gayton v. McCoy*, 593 F.3d 610, 619 (7th Cir. 2010). If the plaintiff offers evidence that allows the jury to infer that a delay in treatment harmed an inmate, there is enough causation evidence to reach trial. *Grieveson v. Anderson*, 538 F.3d 763 (7th Cir. 2008).

In the instant case, it is unquestioned that Defendant Dr. Gaines treated Plaintiff decedent prior to his death for systems commonly associated with heart attack, the cause of Plaintiff decedent's ultimate death. Moreover, Dr. Gaines charts reflect that medical staff was aware that Lance Jones was an inmate in the custody of officers. (Plaintiff's Exhibit 3 pg 5, 6, 7). Additionally, Dr. Gaines ordered follow up with a primary care doctor while knowing Lance Jones did not have a specific doctor to list on his discharge papers. (Plaintiff's Exhibit 3, pg 10). When failing to admit Jones to the hospital and sending him back to a jail that was unequipped to address his serious medical need, Dr. Gaines was deliberately indifferent.

Finally, the ultimate question regarding whether Dr. Gaines decisions not to admit Lance Jones and to discharge him to the jail with nothing more than antacids rose to the level of deliberate indifference is a question of fact. A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Defendant Dr. Gaines cannot demonstrate such an absence, and thus his motion should be denied.

WHEREFORE, Plaintiff ABIGAIL QUINN, as Administrator of the Estate of LANCE JONES, deceased, requests this court deny the relevant portions of Defendant's Motion for Summary Judgment or in the alternative, grant Plaintiff's request for relief un FRCP 56(d).

*/s/ James Murphy-Aguilu*
JAMES MURPHY-AGUILU
IL ARDC: 6290307
Attorneys for Lance Jones
**O'BRIEN&MURPHY-AGUILU**
1739 S. Halsted, 1F
Chicago, IL 60608
773-808-3569

## PROOF OF SERVICE

        I hereby certify that on June 3, 2014, electronically filed the foregoing instrument PLAINTIFF'S RESPONSE TO DEFENDANT DR. GAINES MOTION TO FOR SUMMARY JUDGEMENT, with the Clerk of the Court using the CM/ECF system which will send notification of such filings to the following:

Michael T Walsh: mike.walsh@kitch.com - Attorney for Defendant Gaines

Theresa M. Powell: tpowell@heylroyster.com - Attorney for Sangamon County

and hereby certify that I have mailed on June 3, 2014, by United States Postal Service the foregoing instrument, PLAINTIFF'S RESPONSE TO MOTION TO DISMISS, to the following non-CMF/ECF participants:

None

                                              */s/ James Murphy-Aguilu*
                                              JAMES MURPHY-AGUILU
                                              IL ARDC: 6290307
                                              Attorneys for Lance Jones
                                              **O'BRIEN&MURPHY-AGUILU**
                                              1739 S. Halsted, 1F
                                              Chicago, IL 60608
                                              773-808-3569