CHAPTER 12: MEDICAL AND HEALTH CARE SERVICES:
ARTICLE 12-002: INFIRMARY FACILITIES AND EQUIPMENT:

DATE OF REVISION: 05/2003
DATE OF REVIEW: 05/2004

I. PURPOSE:

To describe facilities and equipment available and to set forth procedures utilized to provide adequate hospital facilities for inmate medical care.

II. DEFINITIONS:

As used in this document, the following definitions will apply:

A. Outside Hospital:

Any hospital or clinic located outside the perimeter of the facility.

B. Self-Care:

Care for a condition that can be treated by the inmate and may include over-the-counter type medications. Self-care may be encouraged by the health care staff through daily availability of non-prescription medications.

C. First Aid:

Care for a condition that requires immediate assistance from a person(s) trained in first aid care and the use of the facilities first aid kit(s).

D. Emergency Care:

Care for an acute illness or unexpected health care need that cannot be deferred until the next scheduled sick call. Emergency care will be provided to the inmate population by the Medical Director, Physician, other staff, local ambulance services and/or outside hospital emergency rooms. This care will be expedited by following specific written procedures for medical emergencies described in this document.

E. Clinic Care:

The health care for an ambulatory (Capable of movement) inmate whose complaints are evaluated and treated at sick call. The medical staff will provide clinic care through a regularly scheduled sick call conducted by a physician, medical officer, dentist, eye doctor or other qualified health-

CHAPTER 12-002

care staff. Off-site consultations with clinics, hospitals and other health care facilities may be provided through scheduled appointments arranged by the facility Medical Director or designee.

F. Infirmary Care:

In-patient bed care for illness or diagnosis that requires limited observation and/or management and does not require admission to a licensed hospital. Infirmary care will be provided to the inmate population through the facility infirmary.

G. Hospitalization:

In-patient care for illness or diagnosis that requires optimum observation and/or management in a licensed hospital. Generally, hospital admission will be arranged between the facility physician and the consulting physician of the admitting hospital.

III. POLICY:

All inmates will be provided health care services at a level appropriate to meet individual and group medical needs. This facility will maintain contracts or agreements with outside local hospital(s) that are fully licensed and accredited to provide services for those inmates whose health care needs cannot be provided within this facility's infirmary. All medical equipment within this facility will be maintained at a level that enables medical staff to perform their duties in accordance with specific procedures. The health care facilities and equipment must conform to the following requirements, at a minimum:

A. The equipment, supplies and materials for services are provided and maintained as determined by the Medical Director.

B. Complete first aid kits will be available in designated areas.

C. Both medical and dental care is available for emergencies on a twenty-four hour basis.

D. Medical, dental or orthopedic devices are provided if the absence of such devises would adversely affect the health of the inmate. This will be determined by the physician and/or the Medical Director.

CHAPTER 12-002

IV. **PROCEDURES:**

A. <u>Routine Transfers</u>:

The hospital for both in-patient care and off-site specialty consultation will be at a locally contracted hospital. All transfers to the hospital will be made with the authorization of this facility's Medical Director or the physician on call. No transfers will be initiated without prior doctor-to-doctor communications in accordance with the following guidelines:

1. Non-emergency in-patient care and specialty consultation will be approved only by the Medical Director or designated physician. Whenever medically feasible, all routine in-patient care and out-patient specialty consultations will be arranged at least one week prior to routine transfer.

2. The medical staff will provide Shift Commanders with a list of all scheduled hospital or clinical transports. It is the responsibility of the Shift Commander to arrange for proper transportation and security coverage of each medical transfer. When ambulance transportation is required, the Medical Director will make the necessary arrangements through a contracted ambulance service and notify the appropriate Shift Commander.

3. Referral to hospitals, other than contracted hospitals, will be coordinated through the Facility Administrator and the Medical Director or Facility Physician.

4. When admission to a hospital, other than contractual, it is the responsibility of the Medical Director or designee to monitor the inmates condition and to arrange transfer to the appropriate hospital as soon as medically feasible.

B. <u>Emergency Medical Transfers</u>:

All emergency transfers will be made by an ambulance to the emergency room of a contracted hospital that is open on a twenty-four hour basis. All emergency medical transfers are to be approved by the Medical Director or designee. Shift Commanders may make this decision, based on circumstances; however, the Medical Director will be notified at the earliest possible time. The Facility Administrator and/or the Administrative staff must be notified on any emergency transfer.

CHAPTER 12-002

C. Disaster Plans:

Any facility disaster plan will be approved by the Facility Administrator. This plan will cover man-made or natural disasters, including fire, riot and other mass-casualty producing incidents. It will include provisions for the following:

1. Emergency evacuation of inmates housed in the infirmary.

2. Triage of a large number of casualties.

3. Use of emergency medical vehicles.

4. Use of local hospital emergency rooms.

5. Communication procedures for medical staff.

6. Security procedures providing for the immediate transfer of inmates in the infirmary.

D. Infirmary Care:

The facility will maintain an infirmary to provide for comprehensive care to inmates requiring bed rest and/or observation without hospitalization. Admission to the infirmary will be initiated only on order of the Medical Director or physician. The infirmary will provide services under the direct or indirect supervision of a qualified health professional in accordance with the facility policies and procedures. The following services will be provided:

1. Clinically trained medical coverage and an on-call physician will be available twenty-four hours a day, including weekends and holidays.

2. Daily rounds will be conducted by qualified medical personnel. These rounds will be noted in each inmate's medical record.

E. Hunger Strikes:

In cases where an inmate initiates a hunger strike, the following protocol will be implemented:

CHAPTER 12-002

1. The inmate will be offered a medical evaluation in the infirmary. The inmate's acceptance or refusal will be documented, signed and witnessed.

2. If the inmate refuses the medical examination, he/she will be offered daily monitoring. This must be documented and witnessed on each inmate encounter.

F. Use of Therapeutic Restraints:

Medical personnel will utilize restraints only as a last resort for inmates who present a danger to self and/or others, i.e. aggressive behavior, suicidal behavior, self-inflicted abuse, etc. Under no circumstances will restraints be used as a disciplinary measure or as a convenience for medical staff.

1. The use of restraints, in the infirmary, will be approved by the RN Medical Director, physician or psychiatrist. Other medical staff and/or correctional officers may apply the restraints after receiving verbal approval of the Medical Director. When a verbal authorization is obtained, it must be documented in the inmate medical record by the Medical Director within twenty-four hours.

2. The authorization for such restraint measures will include the purpose of the clinical justification for the type of restraint used and the length of time for which restraint measures are to be imposed, if known. Restraints may be removed or relaxed at any time when a medical staff member observes the inmate's behavior and clinical condition.

G. Medical Equipment:

The Medical Director or designee will be responsible for the approval and purchase of medical equipment and supplies required by the medical staff. All purchases will be subject to the approval of the Facility Administrator or designee. The Medical Director or designee will manage the medical budget through:

1. Regular review of equipment needs.

2. Preparation of justification for equipment needs.

3. Presentation of equipment needs to the Facility Administrator.

CHAPTER 12-002

   H. <u>Examination Rooms:</u>

The facility will maintain adequately equipped examination rooms used solely for treatment thus ensuring privacy and dignity for both the inmate and medical staff.

1. Each examination room will be equipped with:

   a. Thermometer.
   b. Blood pressure cuff and sphygmomanometer.
   c. Stethoscope.
   d. Ophthalmoscope.
   e. Otoscope.
   f. Percussion hammer.
   g. Scales.
   h. Examination table.
   i. Goose neck light.
   j. Secure refrigerator for medications.

2. All examination rooms will have a hand wash sink equipped with hot and cold running water. Sinks not located within the examination room itself will be located in an immediately accessible area adjacent to the examination room.

   I. <u>Prosthesis:</u>

Medical prosthesis will be available to inmates in accordance with the following conditions:

1. If the health of the inmate would otherwise be adversely affected, the facility will provide medical and/or dental prosthesis.

2. The responsible physician or dentist will determine which cases warrant this treatment.

3. This facility will make arrangements with the appropriate agency for possible funding of any required prosthesis, i.e. insurance, public aid, veteran's administration, etc. If funding is not available, this facility will provide treatment without charge to the inmate for emergency cases only.

4. The inmate may be required to pay for non-essential prosthesis in those cases where the health of the inmate is not adversely

CHAPTER 12-002

affected. This will be determined by the responsible doctor or dentist.

5. The following procedures will be adhered to when considering medical prosthesis:

   a. The Medical Director will review all inmate requests for prosthesis.
   b. The responsible physician will examine the inmate and record results of the examination in the inmate medical record.
   c. If the Medical Director and/or the physician determines that the inmates health would be adversely affected without necessary medical prosthesis, the following steps will be taken:
      1. The responsible physician will arrange a consultation.
      2. Both a verbal and written contract will be made to arrange for an appointment for the inmate.
      3. Appropriate medical records will be forwarded with prior written consent from the inmate.
      4. After the evaluation, the consultant will forward the results to the Medical Director and the requesting physician.
   d. The Medical Director and physician will record all pertinent information in the inmate medical record.
   e. If the physician determines that the medical prosthesis is not required, this decision will be noted in the inmate medical record. In this case, the inmate may choose to pay for the prosthesis.

J. First Aid Kits:

First aid kits will be available in designated areas within the facility. The Medical Director or designee will ensure the kits are properly equipped and maintained through regular inspections.

V. **DOCUMENTATION:**

1. All documentation pertaining to this policy and procedure will be maintained in a separate section of the facility filing system for future reference, if needed.